NO. 07-00-0470-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 3, 2002

_____

IN THE INTEREST OF K.S., A CHILD

_____

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 98-12-05455; HONORABLE GENE L. DULANEY, JUDGE

_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Appellants W.S. and I.S. appeal from a judgment terminating their parental rights to their child, K.S.  By 12 issues appellants assert error by the trial court in (1) allowing testimony of witnesses not properly disclosed during discovery; (2) admitting hearsay evidence; (3) admitting evidence previously used against appellants in a different suit affecting the parent-child relationship; (4) failing to grant a mistrial when evidence that W.S. was under indictment was referred to in the presence of the jury; (5) authorizing the jury to find that parental rights should be terminated on the basis that appellants violated court orders under Chapters 261 or 262 of the Texas Family Code; and (6) submitting a

broad form jury charge which did not require ten or more jurors to find that each parent had violated a specific provision of Family Code § 161.001(1). We affirm.

## I. BACKGROUND

In December, 1998, the Texas Department of Protective and Regulatory Services ("TDPRS" or "the department") filed a Suit Affecting the Parent-Child Relationship seeking conservatorship of K.S., the five-year-old daughter of W.S. and I.S. ("parents"), and also seeking termination of the parent-child relationship. The case was tried to a jury. The jury found, in response to a broad form submission, that the parental rights of both parents should be terminated. The trial court entered judgment terminating the parental rights of W.S. and I.S.

The parents assert, via 12 issues, that the judgment should be reversed. Issue one asserts that the trial court allowed testimony of witnesses not properly disclosed during discovery. Issue two complains that hearsay statements made by K.S. were improperly allowed into evidence even though they did not meet the requirements of TEX. FAM. CODE § 104.006 (Vernon Supp. 2002).[1] By issue three the parents urge that evidence presented in a separate proceeding involving two of I.S.'s children by another marriage should have been excluded on principles of *res judicata* and collateral estoppel. Issue four alleges that

---

[1]References to the Family Code hereafter will be by reference to "Family Code §_." References to provisions of the Texas Rules of Appellate Procedure or the Texas Rules of Civil Procedure, respectively, will be by reference to "TRAP_" or "TRCP_." Reference to provisions of the Texas Rules of Evidence will be by reference to "TRE_." Reference to the Texas Penal Code will be by reference to "Penal Code § ___."

the trial court erred in failing to grant a mistrial when TDPRS offered evidence in the presence of the jury that the father, W.S., had been indicted for aggravated sexual assault when he had not been finally convicted of such crime. Issues five, six, seven and eight assert error in the court's charge authorizing the jury to find that parental rights of W.S. and I.S. should be terminated on the basis that they violated court orders which had been entered under Chapters 261 and 262 of the Texas Family Code. Issues nine, ten, eleven and twelve posit that submitting a broad form jury charge which did not require the same ten or more of the jurors to find that each parent had violated a specific provision of Family Code § 161.001(1) before finding that such parent's parental rights should be terminated was a violation of their federal and state constitutional rights as well as their rights under § 161.001 of the Family Code. The issues presented are the same for W.S. and I.S. For simplicity we will sometimes address the issues only as to W.S.; in such instances our discussions and conclusions as to W.S. will also apply to I.S.

## ISSUE 1: FAILURE TO DISCLOSE
## WITNESSES IN DISCOVERY

By their first issue, W.S. and I.S. assert that the trial court erred in allowing testimony from witnesses not properly disclosed by TDPRS in response to a TRCP 194 request. They assert that neither fact witnesses nor expert witnesses were properly disclosed and no reports from the experts were timely furnished. They urge that pursuant to TRCP 193.6 the trial court was required to exclude the witnesses unless, based on the record, the trial court found (1) good cause for the failure to timely respond or (2) the

3

failure to timely respond did not unfairly surprise or prejudice the other parties. W.S. and I.S. cite Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992), and Northwestern Nat'l County Mut. Ins. Co. v. Rodriguez, 18 S.W.3d 718, 722 (Tex.App.–San Antonio 2000, pet. denied), for the propositions that the rules are designed to prevent trial by ambush and to that end, the proper remedy is exclusion of the witness.

Rulings admitting or excluding evidence are committed to the trial court's sound discretion. See Texas Dept. of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1998). When tendered evidence should be considered for only one purpose, it is the opponent's burden to secure a limiting instruction. See TRE 105(a); Larson v. Cactus Utility Co., 730 S.W.2d 640, 642 (Tex. 1987). If evidence is admitted without limitation, it can be considered for all purposes. See TRE 105(a); Birchfield v. Texarkana Mem. Hosp., 747 S.W.2d 361, 365 (Tex. 1987). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. See Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); In re T.M., 33 S.W.3d 341, 348 (Tex.App.–Amarillo 2000, no pet.).

The record shows that the TRCP 194 Request for Disclosure on which W.S. and I.S. based their objection to the TDPRS witnesses was served only on behalf of I.S. At the time the request was served, W.S. had not made an appearance in the lawsuit and the document specified that I.S. was making the discovery request. The trial court did not

4

abuse its discretion in denying the objection of W.S. to testimony of the TDPRS witnesses when the witnesses had not been disclosed in response to a TRCP 194 request made only by I.S.

I.S. also objected to testimony of the TDPRS witnesses because they had not been disclosed in response to the TRCP 194 request served by her. I.S. did not, however, request an instruction limiting admission of such testimony to the case against W.S. Because the testimony was admissible against W.S., I.S. was required to request such a limiting instruction in order to preserve error. See TRE 105(a); Larson, 730 S.W.2d at 642. Her failure to request a limiting instruction waived her right to complain that the evidence was admitted for all purposes. See TRE 105(a); Birchfield, 747 S.W.2d at 365. Accordingly, we must uphold the ruling as to I.S., as well as to W.S. See Malone, 972 S.W.2d at 43; In re T.M., 33 S.W.3d at 348. The first issue is overruled.

## ISSUE 2: HEARSAY STATEMENTS
## BY THE CHILD, K.S.

Via issue two, W.S. asserts that the trial court erred in allowing proof of statements by K.S. which were hearsay and which did not meet the requirements of Family Code § 104.006. He complains of testimony repeating three specific out-of-court statements by K.S.

The first statement complained of was a report by K.S. to a nurse practitioner working in the Texas Tech Care Center. A Care Center nurse practitioner, Gene Bell,

performed physical examinations of K.S. in connection with allegations that K.S. had been sexually abused. Bell described physical findings from the examinations of K.S. and opined that the physical findings were indicative of both vaginal and anal penetration of the child. The TDPRS attorney asked Bell what statements K.S. made to Bell about "how this may have happened." W.S.'s attorney objected on the basis that statements by K.S. were hearsay, were not the child's first outcry, and that Family Code § 104.006 had to be read in conjunction with Criminal Code § 38.072,[2] which would limit outcry statements to the first outcry. The trial court considered Family Code § 104.006 and overruled the objection. Bell then testified that K.S. told Bell that "They ripped my clothes off and put their fingers in my pee-pee, and put a stick in my pee-pee with dirt on it." The statement by K.S. did not attribute her assault to any particular person. The statement was consistent with other evidence and testimony that K.S. was sexually assaulted by neighborhood boys in the manner she related. W.S. does not present authority or argument as to how admission of the statement, even if it was erroneously admitted, harmed him.

The second statement complained of was a narration by K.S. to Dr. Frances Klegg-Ferris. Klegg-Ferris was a counselor at the Panhandle Assessment Center at the time she dealt with K.S. The Assessment Center is a facility for the medical and psychological examination and assessment of abused children. When Klegg-Ferris was asked about statements made by K.S., W.S. requested a hearing outside the presence of the jury for

---

[2]Reference to the Texas Code of Criminal Procedure will be by reference to "Criminal Code _____."

the purpose of determining admissibility of Klegg-Ferris's testimony under TRE 702. The trial court granted the request and excused the jury. Following voir dire examination of Klegg-Ferris, W.S. objected to her testimony as unreliable under TRE 702. The trial court overruled the objection. Subsequently, Klegg-Ferris was asked whether K.S. made statements about "things that happened to her, abuse that happened to her." W.S. objected on the basis that such statements would be hearsay, but did not request a hearing outside the presence of the jury. The TDPRS attorney asserted that the statements were admissible under Family Code § 104.006, and the trial court overruled the objection. Klegg-Ferris then testified that K.S. related that she had seen her mother and daddy engaging in sex in the bedroom, she had been shown a video of her mother engaging in sex with a man other than her daddy, K.S. had been forced to have sex with a man, K.S. watched herself having sex with the man on video and K.S.'s daddy had put his hands between her legs and "used his fingers."

On appeal W.S. asserts that the statements by K.S. were hearsay, the trial court did not conduct a hearing outside the presence of the jury, and that the statements should be held inadmissible. He cites Family Code § 104.006 and In the Matter of G.M.P., 909 S.W.2d 198 (Tex.App.–Houston [14th Dist.] 1995, no writ) for his assertion that if a hearing outside the presence of the jury does not occur, the hearsay statements of K.S. are not admissible. Again, he does not offer authorities or argument as to how admission of the statement, even if error, resulted in entry of an improper judgment when considered in light of the entire record.

7

The third hearsay statement complained of occurred during testimony by witness Susan Fox. Fox identified herself as a psychotherapist engaged in private practice as a counselor. K.S. was referred to Fox by the Panhandle Assessment Center. Fox was asked what K.S. disclosed to her regarding abuse of K.S. by her father, W.S. Pursuant to a hearsay objection by W.S. and his request that the matter be taken up outside the presence of the jury, the trial court excused the jury, heard the testimony and argument of counsel and overruled the objection. Fox then testified, in part, that K.S. told Fox that W.S. had touched her in her private parts and told her to go into a bedroom, whereupon she screamed and her dog, Spot,[3] bit W.S. on the finger. Nevertheless, K.S. reported that she went into the bedroom where W.S. put his hand on her chest area and laid on top of her with his pants on. Fox related that K.S. stated that she told her mother of the incident and her mother told W.S. that if he repeated the conduct he would go to jail. W.S. does not offer authorities or argument as to how admission of the statement, even if error, harmed him by resulting in entry of an improper judgment.

The TDPRS responds, in part, by asserting that the statements were admissible under Family Code § 104.006; the trial court did not abuse its discretion in admitting the evidence; and the evidence was cumulative of other evidence to the same effect. Among other references to the record, the TDPRS refers to testimony by Dr. Peggy Skinner and Dr. Beth Shapiro, both of whom interviewed and counseled with K.S.

---

[3]W.S. testified during the hearing outside the presence of the jury that the family never had a dog named Spot. The parties stipulated that I.S. would testify to the same effect.

Evidentiary rulings admitting or excluding evidence are committed to the trial court's sound discretion. See Able, 35 S.W.3d at 617; Alvarado, 897 S.W.2d at 753. A trial court abuses its discretion when it rules without regard for any guiding rules or principles. Id. at 754. A case will not be reversed because of an erroneous evidentiary ruling unless the error was harmful, that is, unless it probably caused the rendition of an improper judgment. See TRAP 44.1(a); Able, 35 S.W.3d at 617; Malone, 972 S.W.2d at 43; Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge to an evidentiary ruling usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. See Able, 35 S.W.3d at 617; Alvarado, 897 S.W.2d at 753.

In addition to the hearsay evidence to which W.S. objected and about which complaint is made in his second issue, the record reflects admission of evidence, without objection, of statements made by K.S. referring to sexual activities by W.S. and "acting out" by K.S. of sexual abuse by W.S. For example, Dr. Skinner testified that K.S. played with dolls in such a manner to indicate that adult males sexually contacted small females, and K.S. stated that fathers and brothers taught sexual activities to children. Dr. Shapiro, a licensed marriage and family therapist, testified that she was aware that K.S. had made allegations against her father in terms of his sexually penetrating her.

Some of the evidence of which W.S. complains could have had a significant effect on the jury. But, W.S. does not offer authority or argument as to how admission of the evidence probably resulted in the rendition of an improper judgment when considered in

9

context with other parts of the record, or how such evidence is not cumulative of other evidence that W.S. could have or did sexually abuse K.S. W.S. has not demonstrated that the judgment turns on the particular evidence admitted over his objection. See Able, 35 S.W.3d at 617; Alvarado, 897 S.W.2d at 753. Thus, even if the evidence of which he complains was admitted in error, because W.S. has failed to show that the evidence probably resulted in the rendition of an improper judgment when considered in light of the entire record, we must, and do, overrule the issue. See TRAP 44.1(a); Able, 35 S.W.3d at 617; Malone, 972 S.W.2d at 43.

## ISSUE 3: *RES JUDICATA* AND COLLATERAL ESTOPPEL

By issue three, W.S. and I.S. urge that certain evidence and testimony should have been excluded from trial based on the doctrines of *res judicata* and collateral estoppel. The doctrines were asserted based on a separate suit affecting the parent-child relationship involving I.S. and two of her children by a prior marriage. The separate suit was in the 315th District Court of Harris County ("the Harris County suit"). In the Harris County suit, TDPRS allegedly was attempting to terminate the parent-child relationships between I.S. and two of her children other than K.S. A nonjury hearing was held in the Harris County suit on November 18, 1999. During the hearing, TDPRS waived any claim other than a claim for conservatorship of the children. Neither K.S. nor W.S. were named in the Harris County suit. At the time of the hearing in the Harris County suit, the matter now on appeal was pending in Garza County ("the Garza County suit"). K.S. and W.S.

10

were parties to the Garza County suit. K.S. was represented in Garza County by a court-appointed attorney who was acting as guardian ad litem pursuant to Family Code § 107.001 and attorney ad litem pursuant to Family Code § 107.012.

## A. *Res judicata*

W.S. and I.S. reference <u>Amstadt v. U.S. Brass Corp.</u>, 919 S.W.2d 644, 652 (Tex. 1996), for the requirements of *res judicata*: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. They claim that all the elements of *res judicata* were fulfilled in the Harris County suit so as to bar litigation in the Garza County suit of matters based on allegations of sexual abuse of K.S. by W.S. I.S. and W.S. claim that such allegations were the primary focus of the Garza County suit and, therefore, both certain evidence and the entire Garza County suit should have been foreclosed. We disagree.

*Res judicata* is an affirmative defense under TRCP 94 and should be treated as a plea in bar which reaches the merits of the case. <u>See</u> <u>Walker v. Sharpe</u>, 807 S.W.2d 442, 446 (Tex.App.--Corpus Christi 1991, no writ). The doctrine, in essence, bars a subsequent suit if the matters asserted in the subsequent suit arise out of the same subject matter as

11

a previous suit and which matters, through the exercise of reasonable diligence, could have been litigated in the prior suit. See Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav., 837 S.W.2d 627, 631 (Tex. 1992). Texas adheres to the "transactional" approach to *res judicata*. What comprises a "transaction" for purposes of *res judicata* is to be decided pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. See id.

The Garza County suit involved two parties not named in the Harris County suit: K.S. and W.S. The issues in Garza County focused on whether it was in the best interest of K.S. to have the parent-child relationship terminated between K.S. and either her mother, her father or both. Even assuming, *arguendo*, that there was some evidence in the Garza County case to support a finding that the best interest of K.S. as to termination of the parent-child relationship with I.S. or W.S. was foreclosed by the Harris County suit via the doctrine of *res judicata*, the matter was not established as a matter of law. The record contains evidence to support the trial court's decision to admit the evidence objected to. Thus, the trial court did not abuse its discretion in admitting the evidence. See Brumbalow v. State, 933 S.W.2d 298, 300 (Tex.App.–Waco 1996, pet. ref'd). Moreover, the jury verdict did not require entry of judgment in favor of I.S. and W.S. on the basis of *res judicata* as an affirmative defense. See TRCP 301 (judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict). Neither I.S. nor

12

W.S. requested submission of a jury question on the defense and the defense was waived. See TRCP 279. The trial court did not err in failing to enter judgment in favor of I.S. or W.S. on their *res judicata* defense.

## B. Collateral estoppel

W.S. and I.S. reference <u>Bonniwell v. Beech Aircraft Corp.</u>, 663 S.W.2d 816 (Tex. 1984), as the basis for their collateral estoppel claim. They cite <u>Bonniwell</u> for the elements of the doctrine of collateral estoppel being: (1) the facts sought to be litigated in the second action were fully and fairly litigated in a prior action; (2) the facts were essential to the judgment in the first action; and (3) the parties who litigated the issue in the first action were cast as adversaries in the first action. <u>Id</u>. at 818. They assert that the doctrine bars relitigation of any ultimate issue of fact that was actually litigated and essential to the judgment in a prior suit, and thus bars relitigation in the Garza County suit of two matters: (1) the factual questions of physical and sexual abuse of the children by W.S. and (2) the best interest of K.S. W.S. and I.S. conclude that the Harris County court necessarily found that allegations W.S. physically and sexually abused the children were not true in order to find that it was in the best interest of I.S.'s two children involved in the Harris County suit for I.S. to be their managing conservator. W.S. and I.S. further conclude that such finding collaterally estops TDPRS from litigating such matters in the Garza County suit.

The doctrine of collateral estoppel, or issue preclusion, applies when the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue

13

in a prior suit. See Tarter v. Metropolitan Sav. & Loan Ass'n, 744 S.W.2d 926, 927 (Tex. 1988). Whether the doctrine applies involves equitable considerations of fairness not necessarily encompassed by the "full and fair opportunity" inquiry. See Sysco Food Services, Inc. v. Trapnell, 890 S.W.2d 796, 804 (Tex. 1994).

Some evidence in the Harris County suit duplicated that which is the subject of the complaints of W.S. and I.S. in this appeal. The issues of whether it was in the best interest of K.S. to have the parent-child relationship between K.S. and each of her parents terminated, however, were not fully and fairly litigated in the Harris County suit. For example, the jury charge in the Garza County case instructed the jury, in connection with each question as to termination of the parent-child relationship, that it must have been proven that termination of the parent-child relationship was in the best interest of K.S. The charge instructed the jury, in part, that some of the factors the jury could consider in determining the best interest of K.S. were the desires of the child; the emotional and physical needs of the child, presently and in the future; and the future plans of W.S., I.S. or the agency seeking custody.

As we more fully discuss in connection with issues 9, 10, 11 and 12, the Texas Supreme Court has specified that the controlling question in cases involving termination of the parent-child relationship is whether the parent-child relationship between a parent and the child should be terminated. See Texas Dept. of Human Services v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). Such an ultimate question involves considerations of both specific statutory grounds and the best interest of the individual child in question. See id.

14

at 648-49. As the jury charge demonstrates, the best interest of K.S. was at issue in Garza County, with considerations as to her best interest focused on her individual situation. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). The record of the Harris County hearing does not mandate a conclusion that such issue was fully and fairly litigated in that hearing. The trial court did not abuse its discretion in determining that it would be equitable for the jury in the Garza County case, considering the best interest of K.S., to consider evidence that W.S. may have physically and sexually abused the children.

As we have previously noted, evidentiary rulings admitting or excluding evidence are committed to the trial court's sound discretion. See Able, 35 S.W.3d at 617. When the standard of review is abuse of discretion, the record must simply contain some evidence to support the decision made by the trial court. See Brumbalow, 933 S.W.2d 298 at 300.

Some evidence supports the trial court's decision that the evidence admitted was relevant to the question of the best interest of K.S. Thus, the trial court did not abuse its discretion in denying motions to exclude the evidence. We overrule issue three.

ISSUE 4: EVIDENCE THAT W.S.

WAS UNDER INDICTMENT

Issue four alleges that the trial court erred in failing to grant a mistrial when TDPRS offered evidence in the presence of the jury that W.S. had been indicted for aggravated

15

sexual assault although he had not been finally convicted of such crime. The issue is based on the following question begun by the TDPRS attorney which was interrupted by an objection from counsel for W.S.: "Now, Mr. [W.S.], you are currently under indictment for the offense –." W.S.'s counsel interrupted the question by objecting that evidence of an indictment without a conviction was improper, and requested a mistrial. The trial court sustained the objection, instructed the jury not to consider the indictment for any reason and denied the motion for mistrial.

The overruling of a motion for mistrial should not be disturbed absent an abuse of discretion. See Kipp v. State, 876 S.W.2d 330, 339 (Tex.Crim.App. 1994). In the absence of proof to the contrary, it will be presumed that the jury followed the court's instruction to disregard evidence. See Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998).

W.S. does not reference the record of six volumes of testimony and one volume of exhibits in his assertion of harm from the question that was interrupted by his counsel's objection. He merely concludes that the question, as begun, probably caused the jury to base their decision on emotion rather than on the facts before them, and that the judgment should be reversed.

Error may be waived by inadequate briefing. See, e.g., Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); Gulf Coast State Bank v. Emenhiser, 562 S.W.2d 449, 452-53 (Tex. 1978). And, an appellate court is not required to make an independent,

16

unguided search of the record for evidence supporting a party's position or to determine the validity of an issue. See TRAP 38.1(h); Fredonia State Bank, 881 S.W.2d at 283; Saldana v. Garcia, 285 S.W.2d 197, 201 (Tex. 1955).

W.S. has not proved by his brief, argument, and references to authorities and the record, that the jury did not follow the trial court's instruction to disregard that part of the question voiced by the TDPRS attorney, and that such part of the question probably resulted in entry of an improper judgment. We overrule issue four.

ISSUES 5, 6, 7 and 8: ALLOWING TERMINATION
ON BASIS OF VIOLATION OF PRIOR COURT ORDER

Issues 5, 6, 7 and 8 assert error in the court's charge authorizing the jury to find that parental rights of W.S. and I.S. could be terminated if the jury found that they violated previous court orders which had been entered under Chapters 261 and 262 of the Texas Family Code, and also found termination in the best interest of K.S. The four issues are briefed together and rely, as stated in appellants' brief, on the same facts and legal authorities. The issues assert that proceedings to terminate parental rights on the basis of violated court orders are, in effect, criminal contempt actions whereby the parent is being punished for conduct allegedly committed in the past. Referencing Texas Government Code § 21.002[4] in regard to criminal contempt proceedings, W.S. and I.S. urge that "punishment" of terminating the parent-child relationship is the civil equivalent

---

[4]TEX. GOV'T CODE ANN. § 21.002 (Vernon Supp. 2002). Further references to the Government Code will be by referencing "Government Code § _."

17

of a death penalty and the proceedings, therefore, should be required to conform as closely as practicable to those in criminal cases. They assert that the criminally-equivalent termination proceedings require consideration of whether: (issue 5) violation of a court order can support termination of parental rights without violating the parent's rights under the United States and Texas Constitutions to due process, due course of law and equal protection as well as the right to be free from cruel and unusual punishment; (issue 6) the trial court exceeded its authority by imposing termination of the parent-child relationship for criminal contempt of its court order; (issue 7) the trial court exceeded its authority by imposing termination of the parent-child relationship for criminal contempt based on an evidentiary standard of "clear and convincing" evidence rather than "proof beyond a reasonable doubt"; and (issue 8) terminating parental rights for violation of a court order constitutes constitutionally-prohibited cruel and unusual punishment because punishment for criminal contempt violation of a court order is limited to six months in jail and a $500 fine by Government Code § 21.002. W.S. and I.S. reference M.L.B. v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and Wiley v. Spratlan, 543 S.W.2d 349 (Tex. 1986), as authority for the assertion that termination is the civil equivalent of a criminal death penalty.

Extinguishment of the parent-child relationship by judicial action is a "unique kind of deprivation," see Lassiter v. Dep't of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981), of "an interest far more precious than any property right." See Santosky v. Kramer, 455 U.S. 745, 759, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982).

18

The United States Supreme Court has described termination of parental rights as state action, "few forms [of which] are so severe and irreversible." Id. at 759, 102 S.Ct. at 1398. Nevertheless, the Court has not classified proceedings to terminate the parent-child relationship as criminal proceedings. See Lassiter, 452 U.S. at 27 n.3, 101 S.Ct. at 2160 n.3 ("Some parents will have an additional interest to protect [above the decision whether to terminate parental status]. Petitions to terminate parental rights are not uncommonly based on alleged criminal activity. Parents so accused may need legal counsel to guide them in understanding the problems such petitions may create"); Santosky, 455 U.S. at 764, 102 S.Ct. at 1400 ("Unlike criminal defendants, natural parents have no "double jeopardy" defense against repeated state termination efforts"). Moreover, the federal constitution's due process requirement mandates that criminal guilt be proved beyond a reasonable doubt, see id. at 755, 102 S.Ct. at 1396, while the United States Supreme Court has specifically held that termination of the parent-child relationship, which proceedings are also subject to due process standards, may be based on proof meeting the lesser standard of clear and convincing evidence. See id. at 769-70, 102 S.Ct. at 1403.

Violation of a court order might subject a parent to criminal contempt proceedings, but does not necessarily do so. In the case before us, neither W.S. nor I.S. was charged with criminal contempt. Although termination of their parent-child relationships with K.S. are significant losses to them, neither Texas family law statute nor the United States Supreme Court has denominated the termination proceeding as criminal, or the termination

19

of the parent-child relationship as "punishment" for a crime. See Santosky, 455 U.S. at 765, 102 S.Ct. at 1400; Lassiter, 452 U.S. at 27 n.3, 101 S.Ct. at 2160 n.3; Family Code § 161.001. Nor do we.

Objections by W.S. and I.S. in the trial court and their appellate issues have been based on characterization of the termination proceedings as criminal contempt proceedings. We disagree with such characterization and overrule issues 5, 6, 7 and 8.

## ISSUES 9, 10, 11 and 12: BROAD FORM
## JURY QUESTIONS

W.S. states that issues nine, ten, eleven and twelve rely on the same facts and legal authority, and thus he addresses the issues together in his brief. We will likewise address the issues together.

The trial court submitted the case to the jury on broad form questions. See TRCP 277. Question one asking whether the parental rights of W.S.[5] should be terminated was worded as follows:

Should the parent-child relationship between W.S. and the child, K.S. be terminated?
Answer "Yes" or "No"_____.

_____

[5]The questions and instructions for I.S. and W.S. were the same, except for their names.

20

The jury answered "Yes." The jury was instructed not to answer any further questions if the answer to question one was "Yes." Accordingly, the jury did not answer any other questions. The verdict was signed by ten jurors.

The jury instructions required a "Yes" answer to be based on two findings: (1) termination was in the best interest of the child, and (2) one or more of four specified events had occurred. The instruction and question relating to the "best interest" of the child are not at issue.[6] The instruction relating to specific findings required by Family Code § 161.001(1) is the subject of W.S.'s complaint.

 In connection with jury question one, the jury was instructed:

For the parent-child relationship of [W.S.], to be terminated as to the child, K.S., it must be proven by clear and convincing evidence that at least one of the following events has occurred:

1.   the parent has knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

2.   the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

3.   the parent contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261, Texas Family Code; and/or,

---

[6]Another instruction was: "Best Interest" it must also be proven by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the child. Some of the factors, but not all of the factors you may consider in determining the best interest of the child are: [nine factors listed]."

21

4.    the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

W.S.'s attorney objected to the submission because the question and instructions did not require the same ten[7] or more jurors to find that violation of the same one of the events listed had occurred. W.S. urged in his objections to the charge that the disjunctive language of the instruction would allow three of the jurors to find that one of the listed events occurred, three others to find that a second listed event occurred, three others to find that a third listed event occurred, and another three to find that the fourth listed event occurred, and yet to answer "Yes" to the termination question. W.S. does not contend that any of the four statutory grounds included in the instructions by the trial court lack evidentiary support, and we have overruled his complaints that allowing termination on the basis of violating a court order is improper. Thus, we deem his reliance on <u>Crown Life Ins. Co. v. Casteel</u>, 22 S.W.3d 378, 388 (Tex. 2000) (when, in the face of a timely and specific objection, a trial court submits a single broad form liability question incorporating multiple theories of liability, some valid and some invalid, the submission is harmful error when the

---

[7]The jury was also instructed, in accordance with TRCP 226a.III, that

You may render your verdict upon the vote of ten or more members of the  jury.  The same ten or more of you must agree upon all of the answers made and to the entire verdict . . . .

22

appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory) to be misplaced.

W.S. further urges that the manner of submission violates his right to have specific findings as to the provisions of Family Code § 161.001(1) which are alleged as bases for termination. He urges that implementation of the statutory provisions via broad form jury question and the instructions as given violate his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution and to due course of law and equal protection under Article 1 §§ 3 and 10 of the Texas Constitution.

TDPRS responds that W.S.'s contentions have been foreclosed by the decision of the Texas Supreme Court in E.B. We agree with TDPRS.

In E.B., the trial court submitted the cause to the jury in the following broad form format: "Should the parent-child relationship between [the parent] and the child E.B. be terminated?" The jury was instructed to answer "Yes" or "No." The jury answered "Yes." In connection with the question, the jury was given the following instruction:

> For the parent-child relationship in this case to be terminated, it must be
> proven by clear and convincing evidence that at least one of the following
> events has occurred:

> (1) the parent has knowingly placed or knowingly allowed the
> child to remain in conditions or surroundings which endanger
> the physical or emotional well-being of the child;  or

23

(2) the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

See E.B. v. Texas Department of Human Services, 766 S.W.2d 387, 388 (Tex.App.–Austin 1989), reversed by, 802 S.W.2d 647.

The Austin Court of Appeals reversed the judgment terminating the parental rights of E.B.'s mother. The Court of Appeals reasoned that the submission violated the right of E.B.'s mother to have at least ten jurors determine that she violated one specific termination ground before her parental rights could be terminated. The Texas Supreme Court, however, held that the trial court did not abuse its discretion in the formulation of the jury charge. The Supreme Court specified that the controlling question was whether the parent-child relationship between a parent and a child should be terminated, not what specific grounds the jury relied on in answering the termination questions affirmatively. See E.B., 802 S.W.2d at 649. In reaching its decision, the Texas Supreme Court addressed contentions by the mother that her due process rights were violated by the submission. The Court summarily disagreed: "Recognizing [appellant's] rights does not change the form of submission." Id.

The trial court in this matter tracked the language of Family Code § 161.001(1) in the four grounds given the jury as possible bases for termination of W.S.'s parental rights. Two of the grounds involved endangering the physical or emotional well-being of the child. Two of the grounds involved refusal to submit to or comply with a court order. To the extent that two of the grounds did not involve specific statutory language involving

24

endangering the welfare of the child, the jury charge before us differs from that considered by the Texas Supreme Court in E.B. However, we do not consider such difference to remove this case from the guidance of the Supreme Court's language in E.B. that the controlling question is whether the parent-child relationship should be terminated, not what specific grounds the jury relied on in answering the termination question.

In some instances broad form submissions are not feasible. The Texas Supreme Court has determined, however, that the manner of submission before us is a "feasible" submission. See E.B., 802 S.W.2d at 649. This court's decision in In the Interest of S.H., 548 S.W.2d 804 (Tex.Civ.App.–Amarillo 1977, no writ), which is cited by W.S., pre-dates the changes to TRCP 277 which mandate broad form submissions whenever feasible. S.H. was decided when TRCP 277 did not contain its current language, and before the decision in E.B. S.H. does not control our decision under the current language of TRCP 277 and E.B. We are bound to follow E.B. unless the Texas Supreme Court overrules or vitiates it. See Rios v. Texas Commerce Bancshares, Inc., 930 S.W.2d 809, 816 (Tex.App.--Corpus Christi 1996, writ denied); Penick v. Christensen, 912 S.W.2d 276, 286 (Tex.App.--Houston [14th Dist.] 1995, writ denied). Accordingly, we overrule issues nine, ten, eleven and twelve.

CONCLUSION

Having overruled the twelve issues presented by W.S. and I.S., we affirm the judgment of the trial court.

25

Phil Johnson
Justice


Publish.