# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

--------------
## NO. 03-01-00511-CV
--------------

**Paige A. Cox and Tawnya L. Cox, Appellants**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

-----------------------------------------------------------------
### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 00-6304, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING
-----------------------------------------------------------------


The Texas Department of Protective and Regulatory Services (the Department) filed suit against Paige A. Cox and Tawnya L. Cox for termination in a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. '' 101.032, 161.001 (West 1996 & Supp. 2002). This case involves J.A.C. and M.L.C., the two youngest of the appellants= six children.[1] The Department submitted the following two allegations of statutory misconduct as grounds for termination: (1) knowing endangerment and (2) prior

---

[1] This is the latest of three termination proceedings regarding appellants= six children. The Tenth Court of Appeals overturned the order terminating their relationship with the three oldest children. *In re J.F.C.*, 57 S.W.3d 66 (Tex. App.C Waco 2001, pet. granted). This Court upheld the termination order for the fourth child. *Cox v. Texas Dep=t of Protective & Regulatory Servs.*, No. 03-99-00808-CV, 2000 Tex. App. LEXIS 6645 (Tex. App.C Austin, Oct. 5, 2000, no pet.) (not designated for publication).

termination of the parent-child relationship with another child based on knowing endangerment. *Id.* ' 161.001(d), (e).  After a jury trial, the trial court issued an order of termination.  Appellants challenge the order on two theories.  First, they argue that the jury charge was drafted in the disjunctive, thereby violating their procedural due process rights.  *See* U.S. Const. amend. XIV; Tex. Const. art. I, ' ' 3, 10; Tex. Fam. Code Ann. ' 161.001; Tex. R. Civ. P. 292.  Second, they argue that the court failed to provide them with counsel as required by the family code.  *See* Tex. Fam. Code Ann. ' 107.013 (West Supp. 2002).  We will affirm the trial court=s judgment.

**DISCUSSION**

*The Jury Charge*

In order to terminate parental rights, the family code requires the Department to establish that a parent has committed one of a list of statutory acts or omissions *and* that the termination of parental rights is in the best interest of the child.  *Id.* ' 161.001.  A court may not terminate the parent-child relationship based merely on either neglect or the belief that termination is in the child=s best interest.  *See Richardson v. Green*, 677 S.W.2d 497, 499 (Tex. 1984).  Under the Constitution, termination requires the government to demonstrate by clear and convincing evidence that the parents have violated statutory norms of conduct.  *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (protecting substantive due process right of parents to parent-child relationship under Due Process Clause of Fourteenth Amendment).

Appellants argue that a termination order is only appropriate when the jury makes independent findings regarding the statutory grounds for termination presented to the jury; appellants also assert that each ground must be presented separately.  In this case, they argue, the jury charge is defective

2

because it presented the questions regarding the statutory conduct in the disjunctive. Appellants would require that each question concerning conduct be posed separately, with the jury providing a separate answer for each. Otherwise, they contend, the jury might not come to a unanimous or super-majority decision on any single statutory ground. Appellants claim that this violates their legal rights by abrogating (1) the heightened scrutiny of procedural due process rights they believe is required in termination cases, (2) the family code=s requirement that the state prove both an instance of statutory misconduct and that termination would be in the child=s best interest, and (3) the requirement of rule 292 that all jury determinations be made by a super-majority vote.

The jury charge began by explaining the rights, privileges, duties and powers of a parent. It defined the terms Aclear and convincing evidence@ and Aendangerment.@ Then, separate from the standards for determining statutory misconduct, the charge listed factors to consider in determining the Abest interest@ of the children, including the factors such as the desires of the child, emotional and physical danger to the child, the acts or omissions of the parent, and any excuses for the acts or omissions of the parents. The instructions made clear that, even if one of the statutory grounds for termination was found, the jury was required to make a separate determination of whether the termination would be in the best interest of the child.

The jury questions followed a uniform format, with a separate question addressing each appellant=s relationship to each child.[2] First, the charge asked whether the parent either had knowingly

_____

[2] For the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child [J.A.C.] [M.L.C.] to be terminated, it must be proved by clear and convincing evidence that [Tawnya L. Cox] [Paige A. Cox] has:

endangered the child or had previously lost rights in another child under the endangerment provisions of the

family code. Then, separately, the charge asked whether terminating the relationship would be in the best

interest of the child. Finally, the charge asked the jury to enter a finding on whether the parent-child

---

engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangers the physical or emotional well-being of the child; or

had [his or her] parent-child relationship terminated with respect to another child
based on a finding that the parent=s [sic] conduct was in violation of Paragraph
(D) or (E) of the Texas Family Code or substantially equivalent provisions of the
law of another state.

For the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child [J.A.C.]
[M.L.C.] to be terminated, it must also be proved by clear and convincing evidence that termination
of the parent-child relationship is in the best interest of the child.

Question 1

Should the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child
[J.A.C.] [M.L.C.] be terminated?

**4**

relationship should be terminated. This structure follows the statutory requirement: it poses the statutory bases for termination, then asks whether termination is appropriate considering the best interest of the child, before asking the jury to decide whether to terminate the parent-child relationship.

The rules of civil procedure state that Abroad-form@ submissions Ashall@ be used Awhenever feasible.@ Tex. R. Civ. P. 277. In *Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 648-49 (Tex. 1990), the Texas Supreme Court upheld a jury charge substantially identical to the one in the present case. The supreme court held that, while parents have a substantive due process interest in ensuring that the courts cannot arbitrarily terminate the parent-child relationship, there is no special procedural due process right involved in termination cases. A[T]he charge in parental rights cases should be the same as in other civil cases.@ *Id.* at 648. In light of the same provision of the family code, the supreme court held that the statute did not require an individualized finding of any one of the predicate acts of misconduct on which termination can be based. *E.B.* states that the use of a broad-form submission in a termination of parental rights proceeding does not violate rule 292. *Id.*; *see also* Tex. R. Civ. P. 292. Since *E.B.*, courts have generally held that disjunctive questions are appropriate in termination cases. *See, e.g.*, *In re K.S.*, No. 07-00-00470-CV, 2002 Tex. App. LEXIS 19, *11 (Tex. App.CAmarillo Jan. 3, 2002, no pet.); *In re M.C.M.*, 57 S.W.3d 27, 32 (Tex. App.CHouston [1st Dist.] 2001, pet. denied). *But see In re B.L.D. and B.R.D.*, 56 S.W.3d 203, 218 (Tex. App.CWaco 2001, pet. granted).[3]

---

[3] The Tenth Court of Appeals recently reversed and remanded a termination case because the broad-form submission allowed termination of parental rights without ensuring that at least ten jurors agreed on any one of the possible statutory conduct charges. *In re B.L.D. and B.R.D.*, 56 S.W.3d 203, 218 (Tex. App.CWaco 2001, pet. granted). That opinion relied on *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387-90 (Tex. 2000), for the proposition that a broad-form liability question

5

incorporating multiple theories of liability is invalid. *B.L.D.*, 56 S.W.3d at 218. However, *Crown Life* merely held that when a broad-form jury submission includes multiple theories of liability, and one of those theories is legally improper, the entire jury charge is invalid. *Crown Life*, 22 S.W.3d at 387-90. *Crown Life* does not apply in cases where the disjunctive allegations track the language of a governing statute, as does the jury charge in this case. *See B.L.D*, 56 S.W.3d at 700 (Gray, J., dissenting); *see also Excel Corp. v. Apodaca*, 51 S.W.3d 686, 700 (Tex. App.CAmarillo 2001, pet. granted) (citing *E.B.* for the proposition that valid and settled theories must be pleaded in the disjunctive even after *Crown Life*).

*E.B.* controls this case. *E.B.* refutes the argument that there is a special procedural due process right inherent in termination proceedings, by holding that termination cases are to be treated in the same manner as other civil cases. *E.B.* rejects the argument that the family code specifically requires an individualized finding that the parents in a termination suit have engaged in one of the acts listed as a predicate to termination. In *E.B.*, the supreme court held that presenting a question in the disjunctive did not violate rule 292 in the context of a termination proceeding. Because *E.B.* forecloses appellants= arguments, we overrule appellants= issues regarding the construction of the jury charge.

### *Appointment of Counsel*

The trial court originally appointed a single attorney to represent both appellants during the termination proceedings. However, two months before trial, appellants dismissed appointed counsel and informed the court of their decision. Appellants offered no reason for the dismissal. Paige Cox simply asserted his right Aas a father@ to address the court. He also represented to the court that he intended to retain private counsel for the remainder of the proceedings. Appellants dismissed their lawyer even though the court admonished them that they would be waiving any possible ineffective assistance of counsel claims they might bring in the future and that new counsel might not be provided for them.

Despite the warning, less than a week before trial, appellants requested appointment of new counsel. The trial court refused, pointing out that the appellants had willingly dismissed their court-appointed lawyer. Appellants then, on the Friday before trial, filed a written motion for appointment of counsel and a continuance to allow the new counsel to prepare the case. They argued that their original counsel had been ineffective because he did not serve discovery on the Department, filed no rule 702

**7**

challenges against the Department=s introduction of expert witnesses, and did not contact the attorney who had been assisting the appellants *pro bono publico*. Appellants also requested that separate counsel be appointed for each of the appellants because of a purported conflict of interest. They did not articulate the nature of that conflict. Their written motion requesting appointment of new counsel only asserted that there had been disagreement between the appellants and their court-appointed lawyer over trial strategy. The trial court refused appellants= request for appointment of additional trial counsel.

Appellants now challenge the trial court=s rulings regarding the appointment of counsel claiming that (1) the trial court erred in refusing to appoint new counsel pursuant to their written motion and (2) the original appointment of counsel was insufficient because the trial court had not appointed *separate counsel* for each appellant.[4]

The family code provides for the mandatory appointment of an attorney *ad litem* to represent the interests of each indigent parent of the child who responds in opposition to the termination. Tex. Fam. Code Ann. ' 107.013(a)(1). The appellants do not dispute that the trial court initially complied with this statutory mandate. Rather, appellants contend that this provision of the family code guarantees representation by appointed counsel through the culmination of the termination proceedings. However, neither this statute nor case law indicates whether new counsel must be appointed after a parent has dismissed court-appointed counsel. The family code is silent as to whether indigent parents have a right to additional appointment of counsel after the initial counsel has been dismissed by the parents. Furthermore,

---

[4] Although appellants also challenge the trial court=s decision not to provide them with appellate counsel, the issue is moot because appellants have been ably represented by retained appellate counsel in this appeal.

**8**

the Constitution does not require that counsel be appointed for all indigents faced with termination of their parental rights; the trial court must weigh the parent=s interests, the State=s interests, and the risk of an erroneous decision without counsel. *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 27-32 (1981).

Texas courts have applied the *Lassiter* analysis to determine that trial courts have discretion as to the *timing* of the appointment of counsel in termination proceedings. *See In re J.R.P.*, 55 S.W.3d 147, 150-51(Tex. App.CAmarillo 2001, pet. filed) (applying *Lassiter* to hold that trial court had discretion not to appoint counsel until after parent requested appointment); *In re M.J.M.L.*, 31 S.W.3d 347, 355-56 (Tex. AppCSan Antonio 2000, pet. denied) (Athe timing of appointment of counsel to indigent parents appearing in opposition to termination is a matter within the trial court=s discretion@). These cases suggest that, outside of the strict statutory requirement that counsel be appointed on request, trial courts have discretion to make decisions about the appointment of counsel subject only to the factors listed in *Lassiter*.

The trial court fulfilled the requirements of the family code when it first appointed counsel for appellants. The decision to appoint counsel a second time was, therefore, within the trial court=s discretion. *See Lassiter*, 452 U.S. at 32; *J.R.P.*, 55 S.W.3d at 150-51; *M.J.M.L.*, 31 S.W.3d at 355-56. Appellants requested the appointment of new counsel less than one week before trial, despite earlier admonitions by the trial court, and filed their written motion requesting appointment of new counsel the Friday before trial. These actions were almost two months after appellants dismissed appointed counsel and represented to the court that they would retain private counsel. During that two-month period, appellants did not complain about their original counsel or suggest that the court should have appointed new counsel. Because appellants waited until the eve of trial to request new counsel, after having maintained to

the court that they intended to obtain retained counsel, we hold that the trial court was within its discretion in

determining that appellants waived their right to appointed counsel.[5]

---

[5] The right to counsel can be waived, even by criminal defendants. *See Collier v. State*, 959 S.W.2d 621, 625-26 (Tex. Crim. App. 1997).

Additionally, appellants suggest that they were entitled to a second court-appointed lawyer because their first was ineffective. They attack appointed counsel for failing to file an answer, for not filing a rule 702 motion regarding the Department=s expert witnesses, and for not filing discovery on the Department. Assuming without deciding that there is a right to the effective assistance of counsel under the family code, this case does not constitute an instance of reversible error.[6] As the Department points out, none of these alleged deficiencies resulted in harm to the appellant. With regard to the failure to file an answer, the Department never moved for a default judgment. The Department offered no expert witnesses. There is no showing in the record that discovery directed to the Department would have factually changed any of the proof at trial.[7] After reviewing the record, we conclude that there is no demonstration of harm, and appellants have not directed us to portions of the record that would suggest otherwise.

---

[6] While recognizing that the family code provides for appointed counsel to some indigent parents in termination cases, courts have found that this right does not rise to the level of the Sixth Amendment guarantee of effective counsel afforded to criminal defendants. *See Arteaga v. Texas Dep=t of Protective & Regulatory Servs.*, 924 S.W.2d 756, 762 (Tex. App.CAustin 1996, writ denied); *see also In re B.B.*, 971 S.W.2d 160, 172 (Tex. App.CBeaumont 1998, pet. denied); *In re J.F.*, 888 S.W.2d 140, 143 (Tex. App.CTyler 1994, no writ); *Posner v. Dallas County Child Welfare Unit*, 784 S.W.2d 585, 588 (Tex. App.CEastland 1990, writ denied); *Howell v. Dallas County Child Welfare Unit*, 710 S.W.2d 729, 734-35 (Tex. App.CDallas 1986, writ ref=d n.r.e). Only the Tenth and First Courts of Appeals have held to the contrary. *See B.L.D.*, 56 S.W.3d at 211-12; *In re J.M.S.*, 43 S.W.3d 60, 62-64 (Tex. App.CHouston [1st Dist.] 2001, no pet.) (AIf we require mandatory appointment of counsel, we must hold the appointed counsel accountable if they are ineffective.@).

[7] Even if we were to apply the constitutional standard for ineffective assistance of counsel, no evidence supports the claim that appellants= appointed lawyer=s actions were ineffective. Absent actions so egregious that they *per se* comprise ineffective assistance, a criminal defendant pleading ineffective assistance must demonstrate that counsel=s performance was unreasonable under the prevailing professional norms and that the challenged action was not sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991).

Because appellants have not demonstrated that they had a compelling interest in the appointment of a second court-appointed lawyer after they terminated their first, and because of their delay in requesting new counsel, we overrule appellants= issue regarding their motion to appoint new counsel.

Appellants also assert that the original appointment of counsel was inadequate because, they argue, the trial court failed to recognize a conflict of interest between appellants and, therefore, failed to appoint them separate counsel. If both parents are entitled to the appointment of counsel under section 107.013(a) of the family code, the trial court may appoint a single attorney to represent both parents upon a finding that the interests of the parents are not in conflict. Tex. Fam. Code Ann. ' 107.013(a), (b).[8] However, in appointing a single attorney for appellants, the trial court implicitly ruled that there was no conflict. The record does not indicate that at any time before appellants requested the appointment of new counsel they asserted a conflict of interest or contested the original appointment.

Appellants only raised this point the week before trial. At that time, they were unable to articulate any conflict of interest between their two defenses. Their written motion, filed two days later, only

---

[8] Section 107.013 (b) reads as follows:

(b)  If both parents of the child are entitled to the appointment of an attorney ad litem under this section and the court finds that the interests of the parents are not in conflict, the court may appoint a single attorney ad litem to represent the interests of both parents.

Tex. Fam. Code Ann. ' 107.013(b) (West Supp. 2002). The family code is silent as to whether the trial court, after initially appointing a single attorney to represent both parents, must appoint additional counsel to represent each parent individually upon a later showing of a conflict of interests. Because appellants never articulated or otherwise demonstrated to the trial court their purported conflict of interest, we need not address this issue.

indicated that there had been a disagreement between appellants and appointed counsel over trial strategy, not that the appellants= interests were so opposed that they were entitled to separate counsel.

Before this Court, appellate counsel has raised what he considers to be an Ainherent@ conflict between the two appellants that merited the automatic appointment of separate counsel. Appellate counsel alleges that the Department=s case was based, in part, on the fact that J.A.C. was born with cocaine in his system. This allegation only involved Tawnya Cox; Paige Cox was not necessarily implicated. Therefore, appellants argue, the trial court should originally have appointed separate counsel.

Even if an Ainherent@ conflict of this nature can be raised for the first time on appeal, we reject this argument. The record reveals that there was no factual conflict between the two appellants. In defending themselves, both parents conceded the fact that J.A.C. was born with drugs in his system. Furthermore, at trial, Paige Cox admitted that he had supplied cocaine to his wife while she was in labor with J.A.C. Therefore, any conflict between the appellants is, at most, theoretical. We overrule appellants= argument that they should have been appointed separate counsel from the outset of the termination proceedings.

## CONCLUSION

Having overruled all of appellants= issues, we affirm the judgment of the trial court.

13

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   May 23, 2002

Do Not Publish