In the Interest of J.F., B.D., S.F. & T.F., Minor Children.

No. 12–93–00293–CV.

Court of Appeals of Texas, Tyler.

Oct. 31, 1994.

Ebb B. Mobley, Elizabeth Ann Fulton, Longview, for appellant.

Janie Johnson, Dist. Attys. Office, Longview, for appellee.

HOLCOMB, Justice.

This is an appeal from a jury verdict terminating the parent-child relationship between Appellant and her four children. In three points of error, Appellant challenges the sufficiency of the evidence to support the termination and the effective assistance of her court appointed counsel. We will affirm.

On October 23, 1992, the Texas Department of Protective and Regulatory Services ("CPS") removed Appellant's three minor daughters from her home. Three days later, CPS removed Appellant's son from her custody even though he was living with his grandparents. CPS filed a petition to terminate the parent-child relationship between Appellant and her four children. After hearing the evidence, the jury terminated her parental rights.

■ In her first two points of error, Appellant challenges the sufficiency of the evidence to support the jury's verdict. When reviewing a "no evidence" point of error, we must consider only the evidence and reasonable inferences to be drawn therefrom which, when viewed in the most favorable light, supports the jury verdict, disregarding all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). Should a "no evidence" point be sustained, the challenged findings may be disregarded entirely and the judgment rendered for the Appellant. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). It is fundamental that these fact findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown Savings and Loan Association*, 595 S.W.2d 486, 488 (Tex.1979).

■ Appellant also presents a "factually insufficient evidence" point of error. In reviewing "factually insufficient evidence" points, we must consider all of the evidence, including any evidence that is contrary to the judgment. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). A jury verdict can only be set aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

■ The natural right between a parent and child is one of constitutional dimensions, therefore, the FAMILY CODE creates a strong presumption in favor of parental custody and imposes a heavy burden on a non-parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). To prove that a parental right must be involuntarily terminated, Section 15.02(a) states in relevant part:

(a) A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

.    .    .    .    .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

... and in addition, the court further finds that (2) termination is in the best interest of the child.

TEX.FAM.CODE ANN. § 15.02(a)(1) (Vernon Supp.1992).

■ The burden of proof necessary to involuntarily terminate parental rights is clear and convincing evidence. *Holick*, 685 S.W.2d at 20. Appellant argues that because the Appellees failed to produce evidence from an expert that the children were in danger, and failed to record, take pictures, or otherwise document the allegedly poor condition of the children and their living conditions, it failed to meet its burden. She cites *Clark v. Dearen*, 715 S.W.2d 364 (Tex.App.—Houston [1st Dist.] 1986, no writ), and reasons that when termination of parental rights relies heavily

on proof of medical facts, the petitioner must submit evidence other than hearsay or unsubstantiated opinions of witnesses who are not qualified as a medical expert. In *Clark,* the mother had voluntarily relinquished her rights, but the father had not. The trial court voluntarily terminated the mother's rights, involuntarily terminated the father's rights, and granted a petition for adoption, which the appellate court reversed. The testimony at trial revealed that the father was illiterate and totally disabled. He had suffered a back injury while doing construction work, and was burned over 60% of his body. His income depended solely on social security and food stamps and he was unable to obtain a driver's license. Although the evidence indicated that the father might lack some of the attributes of an ideal parent, the court held that without any expert testimony showing either physical or emotional harm to the child, the harsh remedy of termination of the father's parental rights was not justified.

The facts in this case are clearly distinguishable. At trial, the Appellees established that Appellant endangered the physical and emotional well being of her children. In 1989, CPS received their first report that Appellant had threatened to kill the two children in her custody and commit suicide. After determining that there was "reason to believe" that Appellant had physically neglected her children, CPS provided transportation, food, clothing, diapers, therapy, counseling, parenting classes, homemaker services, rent assistance and sheltered workshops for Appellant. However, the poor living conditions and physical neglect reoccurred until the last referral on October 23, 1992, which resulted in removal of Appellant's four children. It was on that date when investigating officers went to Appellant's home to investigate a report that she was living with a man who had previously been convicted of child abuse in another jurisdiction. When they arrived, they found Appellant's three youngest children, ages 4, 2, and 13 months, being supervised only by the four year old. The house was described as filthy, urine soaked, smelly, and unsafe. The two year old was found asleep on the floor lying face down in a bowl of spaghetti, with food caked on her hair, face, and neck.

The 13 month old was asleep surrounded by baby bottles with spoiled milk.

The foster mother assigned to take care of the three girls, described the girls as "filthy." She said that the two youngest girls had on sweatshirts and diapers, wore no shoes, smelled of urine, and suffered from a severe case of head lice. The two year old was unable to talk, could barely walk, and ate with her hands. The 13 month old could not sit up unassisted and had a kidney disorder. Both the two year old and the 13 month old appeared to be developmentally delayed, but testing did not indicate the delays to be genetic.

Although Appellant's son lived with her parents, his neglect was also substantiated by the testimony at trial. The foster mother assigned to Appellant's son testified that, after having 44 children placed in her home within the past twelve years, this boy was in the worst condition she had ever seen. His clothes had to be discarded because of their condition. He had bowel movements caked and dried in his clothes that appeared to be days old and his hair was infested with lice. Appellant's son was screened for special education and repeated the first grade, but was determined to be developmentally delayed because of emotional problems.

Although Appellant denied that she had any knowledge of sexual or physical abuse to her children, there was ample evidence to conclude that physical and sexual abuse had occurred to the children. Periodically, Appellant had a male companion, Wayne Welty, around her children. During the investigation, the four year old girl stated to a CPS caseworker that Welty had sucked her private parts, touched her with his penis, and penetrated her until blood came out. At the time of trial, Welty had previously been convicted of a felony in another state for the abuse of two minor female children and was under felony indictment for the aggravated sexual assault of three children in Texas. There was also testimony that Appellant had another male companion who had also assaulted her daughter. The evidence, when considered in support of the jury's verdict, as well as when considered in its entirety, justi-

fies and supports the verdict to terminate Appellant's parental rights.

 In her third point, Appellant contends that her court-appointed counsel was ineffective during the trial because he failed to prepare for trial and failed to file pre-trial motions. Although Appellant cites cases to support the proposition that an involuntary termination of parental rights involves fundamental constitutional rights, she does not cite any cases in support of her position that she has a constitutional right to the effective assistance of counsel in a termination suit consistent with the right extended in criminal actions. The courts in Texas have consistently stated that the constitutional right to effective assistance of counsel in criminal actions does not extend to a civil proceeding for termination of parental rights. *Howell v. Dallas County Child Welfare Unit,* 710 S.W.2d 729 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987); *Posner v. Dallas County Child Welfare,* 784 S.W.2d 585 (Tex.App.—Eastland 1990, writ den'd). Furthermore, there is no indication in the record before us of her attorney's failure to adequately prepare her case. Point three is overruled.

The judgment of the trial court is **affirmed.**