TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00511-CV







Paige A. Cox and Tawnya L. Cox, Appellants



v.



Texas Department of Protective and Regulatory Services, Appellee








FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY

NO. 00-6304, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING







 The Texas Department of Protective and Regulatory Services (the Department) filed
suit against Paige A. Cox and Tawnya L. Cox for termination in a suit affecting the parent-child
relationship. See Tex. Fam. Code Ann. §§ 101.032, 161.001 (West 1996 & Supp. 2002). This case
involves J.A.C. and M.L.C., the two youngest of the appellants' six children. (1) The Department
submitted the following two allegations of statutory misconduct as grounds for termination: (1)
knowing endangerment and (2) prior termination of the parent-child relationship with another child
based on knowing endangerment. Id. § 161.001(d), (e). After a jury trial, the trial court issued an
order of termination. Appellants challenge the order on two theories. First, they argue that the jury
charge was drafted in the disjunctive, thereby violating their procedural due process rights. See U.S.
Const. amend. XIV; Tex. Const. art. I, §§ 3, 10; Tex. Fam. Code Ann. § 161.001; Tex. R. Civ. P.
292. Second, they argue that the court failed to provide them with counsel as required by the family
code. See Tex. Fam. Code Ann. § 107.013 (West Supp. 2002). We will affirm the trial court's
judgment.


DISCUSSIONThe Jury Charge

 In order to terminate parental rights, the family code requires the Department to
establish that a parent has committed one of a list of statutory acts or omissions and that the
termination of parental rights is in the best interest of the child. Id. § 161.001. A court may not
terminate the parent-child relationship based merely on either neglect or the belief that termination
is in the child's best interest. See Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984). Under
the Constitution, termination requires the government to demonstrate by clear and convincing
evidence that the parents have violated statutory norms of conduct. Santosky v. Kramer, 455 U.S.
745, 753 (1982) (protecting substantive due process right of parents to parent-child relationship
under Due Process Clause of Fourteenth Amendment).

 Appellants argue that a termination order is only appropriate when the jury makes
independent findings regarding the statutory grounds for termination presented to the jury; appellants
also assert that each ground must be presented separately. In this case, they argue, the jury charge
is defective because it presented the questions regarding the statutory conduct in the disjunctive. 
Appellants would require that each question concerning conduct be posed separately, with the jury
providing a separate answer for each. Otherwise, they contend, the jury might not come to a
unanimous or super-majority decision on any single statutory ground. Appellants claim that this
violates their legal rights by abrogating (1) the heightened scrutiny of procedural due process rights
they believe is required in termination cases, (2) the family code's requirement that the state prove
both an instance of statutory misconduct and that termination would be in the child's best interest,
and (3) the requirement of rule 292 that all jury determinations be made by a super-majority vote.

 The jury charge began by explaining the rights, privileges, duties and powers of a
parent. It defined the terms "clear and convincing evidence" and "endangerment." Then, separate
from the standards for determining statutory misconduct, the charge listed factors to consider in
determining the "best interest" of the children, including the factors such as the desires of the child,
emotional and physical danger to the child, the acts or omissions of the parent, and any excuses for
the acts or omissions of the parents. The instructions made clear that, even if one of the statutory
grounds for termination was found, the jury was required to make a separate determination of
whether the termination would be in the best interest of the child.

 The jury questions followed a uniform format, with a separate question addressing
each appellant's relationship to each child. (2) First, the charge asked whether the parent either had 
knowingly endangered the child or had previously lost rights in another child under the
endangerment provisions of the family code. Then, separately, the charge asked whether terminating
the relationship would be in the best interest of the child. Finally, the charge asked the jury to enter
a finding on whether the parent-child relationship should be terminated. This structure follows the
statutory requirement: it poses the statutory bases for termination, then asks whether termination is
appropriate considering the best interest of the child, before asking the jury to decide whether to
terminate the parent-child relationship.

 The rules of civil procedure state that "broad-form" submissions "shall" be used
"whenever feasible." Tex. R. Civ. P. 277. In Texas Department of Human Services v. E.B., 802
S.W.2d 647, 648-49 (Tex. 1990), the Texas Supreme Court upheld a jury charge substantially
identical to the one in the present case. The supreme court held that, while parents have a
substantive due process interest in ensuring that the courts cannot arbitrarily terminate the parent-child relationship, there is no special procedural due process right involved in termination cases. 
"[T]he charge in parental rights cases should be the same as in other civil cases." Id. at 648. In light
of the same provision of the family code, the supreme court held that the statute did not require an
individualized finding of any one of the predicate acts of misconduct on which termination can be
based. E.B. states that the use of a broad-form submission in a termination of parental rights
proceeding does not violate rule 292. Id.; see also Tex. R. Civ. P. 292. Since E.B., courts have
generally held that disjunctive questions are appropriate in termination cases. See, e.g., In re K.S.,
No. 07-00-00470-CV, 2002 Tex. App. LEXIS 19, *11 (Tex. App.--Amarillo Jan. 3, 2002, no pet.);
In re M.C.M., 57 S.W.3d 27, 32 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). But see In re
B.L.D. and B.R.D., 56 S.W.3d 203, 218 (Tex. App.--Waco 2001, pet. granted). (3)

 E.B. controls this case. E.B. refutes the argument that there is a special procedural
due process right inherent in termination proceedings, by holding that termination cases are to be
treated in the same manner as other civil cases. E.B. rejects the argument that the family code
specifically requires an individualized finding that the parents in a termination suit have engaged in
one of the acts listed as a predicate to termination. In E.B., the supreme court held that presenting
a question in the disjunctive did not violate rule 292 in the context of a termination proceeding. 
Because E.B. forecloses appellants' arguments, we overrule appellants' issues regarding the
construction of the jury charge.


Appointment of Counsel

 The trial court originally appointed a single attorney to represent both appellants
during the termination proceedings. However, two months before trial, appellants dismissed
appointed counsel and informed the court of their decision. Appellants offered no reason for the
dismissal. Paige Cox simply asserted his right "as a father" to address the court. He also represented
to the court that he intended to retain private counsel for the remainder of the proceedings. 
Appellants dismissed their lawyer even though the court admonished them that they would be
waiving any possible ineffective assistance of counsel claims they might bring in the future and that
new counsel might not be provided for them.

 Despite the warning, less than a week before trial, appellants requested appointment
of new counsel. The trial court refused, pointing out that the appellants had willingly dismissed their
court-appointed lawyer. Appellants then, on the Friday before trial, filed a written motion for
appointment of counsel and a continuance to allow the new counsel to prepare the case. They argued
that their original counsel had been ineffective because he did not serve discovery on the
Department, filed no rule 702 challenges against the Department's introduction of expert witnesses,
and did not contact the attorney who had been assisting the appellants pro bono publico. Appellants
also requested that separate counsel be appointed for each of the appellants because of a purported
conflict of interest. They did not articulate the nature of that conflict. Their written motion
requesting appointment of new counsel only asserted that there had been disagreement between the
appellants and their court-appointed lawyer over trial strategy. The trial court refused appellants'
request for appointment of additional trial counsel.

 Appellants now challenge the trial court's rulings regarding the appointment of
counsel claiming that (1) the trial court erred in refusing to appoint new counsel pursuant to their
written motion and (2) the original appointment of counsel was insufficient because the trial court
had not appointed separate counsel for each appellant. (4)

 The family code provides for the mandatory appointment of an attorney ad litem to
represent the interests of each indigent parent of the child who responds in opposition to the
termination. Tex. Fam. Code Ann. § 107.013(a)(1). The appellants do not dispute that the trial court
initially complied with this statutory mandate. Rather, appellants contend that this provision of the
family code guarantees representation by appointed counsel through the culmination of the
termination proceedings. However, neither this statute nor case law indicates whether new counsel
must be appointed after a parent has dismissed court-appointed counsel. The family code is silent
as to whether indigent parents have a right to additional appointment of counsel after the initial
counsel has been dismissed by the parents. Furthermore, the Constitution does not require that
counsel be appointed for all indigents faced with termination of their parental rights; the trial court
must weigh the parent's interests, the State's interests, and the risk of an erroneous decision without
counsel. Lassiter v. Department of Soc. Servs., 452 U.S. 18, 27-32 (1981). 

 Texas courts have applied the Lassiter analysis to determine that trial courts have
discretion as to the timing of the appointment of counsel in termination proceedings. See In re
J.R.P., 55 S.W.3d 147, 150-51(Tex. App.--Amarillo 2001, pet. filed) (applying Lassiter to hold that
trial court had discretion not to appoint counsel until after parent requested appointment); In re
M.J.M.L., 31 S.W.3d 347, 355-56 (Tex. App--San Antonio 2000, pet. denied) ("the timing of
appointment of counsel to indigent parents appearing in opposition to termination is a matter within
the trial court's discretion"). These cases suggest that, outside of the strict statutory requirement that
counsel be appointed on request, trial courts have discretion to make decisions about the
appointment of counsel subject only to the factors listed in Lassiter.

 The trial court fulfilled the requirements of the family code when it first appointed
counsel for appellants. The decision to appoint counsel a second time was, therefore, within the trial
court's discretion. See Lassiter, 452 U.S. at 32; J.R.P., 55 S.W.3d at 150-51; M.J.M.L., 31 S.W.3d
at 355-56. Appellants requested the appointment of new counsel less than one week before trial,
despite earlier admonitions by the trial court, and filed their written motion requesting appointment
of new counsel the Friday before trial. These actions were almost two months after appellants
dismissed appointed counsel and represented to the court that they would retain private counsel. 
During that two-month period, appellants did not complain about their original counsel or suggest
that the court should have appointed new counsel. Because appellants waited until the eve of trial
to request new counsel, after having maintained to the court that they intended to obtain retained
counsel, we hold that the trial court was within its discretion in determining that appellants waived
their right to appointed counsel. (5)

 Additionally, appellants suggest that they were entitled to a second court-appointed
lawyer because their first was ineffective. They attack appointed counsel for failing to file an
answer, for not filing a rule 702 motion regarding the Department's expert witnesses, and for not
filing discovery on the Department. Assuming without deciding that there is a right to the effective
assistance of counsel under the family code, this case does not constitute an instance of reversible
error. (6) As the Department points out, none of these alleged deficiencies resulted in harm to the
appellant. With regard to the failure to file an answer, the Department never moved for a default
judgment. The Department offered no expert witnesses. There is no showing in the record that
discovery directed to the Department would have factually changed any of the proof at trial. (7) After
reviewing the record, we conclude that there is no demonstration of harm, and appellants have not
directed us to portions of the record that would suggest otherwise.

 Because appellants have not demonstrated that they had a compelling interest in the
appointment of a second court-appointed lawyer after they terminated their first, and because of their
delay in requesting new counsel, we overrule appellants' issue regarding their motion to appoint new
counsel.

 Appellants also assert that the original appointment of counsel was inadequate
because, they argue, the trial court failed to recognize a conflict of interest between appellants and,
therefore, failed to appoint them separate counsel. If both parents are entitled to the appointment of
counsel under section 107.013(a) of the family code, the trial court may appoint a single attorney to
represent both parents upon a finding that the interests of the parents are not in conflict. Tex. Fam.
Code Ann. § 107.013(a), (b). (8) However, in appointing a single attorney for appellants, the trial court
implicitly ruled that there was no conflict. The record does not indicate that at any time before
appellants requested the appointment of new counsel they asserted a conflict of interest or contested
the original appointment.

 Appellants only raised this point the week before trial. At that time, they were unable
to articulate any conflict of interest between their two defenses. Their written motion, filed two days
later, only indicated that there had been a disagreement between appellants and appointed counsel
over trial strategy, not that the appellants' interests were so opposed that they were entitled to
separate counsel.

 Before this Court, appellate counsel has raised what he considers to be an "inherent"
conflict between the two appellants that merited the automatic appointment of separate counsel. 
Appellate counsel alleges that the Department's case was based, in part, on the fact that J.A.C. was
born with cocaine in his system. This allegation only involved Tawnya Cox; Paige Cox was not
necessarily implicated. Therefore, appellants argue, the trial court should originally have appointed
separate counsel.

 Even if an "inherent" conflict of this nature can be raised for the first time on appeal,
we reject this argument. The record reveals that there was no factual conflict between the two
appellants. In defending themselves, both parents conceded the fact that J.A.C. was born with drugs
in his system. Furthermore, at trial, Paige Cox admitted that he had supplied cocaine to his wife
while she was in labor with J.A.C. Therefore, any conflict between the appellants is, at most,
theoretical. We overrule appellants' argument that they should have been appointed separate counsel
from the outset of the termination proceedings.


CONCLUSION

 Having overruled all of appellants' issues, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: May 23, 2002

Do Not Publish 

1. This is the latest of three termination proceedings regarding appellants' six children. The
Tenth Court of Appeals overturned the order terminating their relationship with the three oldest
children. In re J.F.C., 57 S.W.3d 66 (Tex. App.--Waco 2001, pet. granted). This Court upheld the
termination order for the fourth child. Cox v. Texas Dep't of Protective & Regulatory Servs., No.
03-99-00808-CV, 2000 Tex. App. LEXIS 6645 (Tex. App.--Austin, Oct. 5, 2000, no pet.) (not
designated for publication).
2. For the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child
[J.A.C.] [M.L.C.] to be terminated, it must be proved by clear and convincing evidence that [Tawnya
L. Cox] [Paige A. Cox] has:


engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangers the physical or emotional well-being of the child; or


had [his or her] parent-child relationship terminated with respect to another child
based on a finding that the parent=s [sic] conduct was in violation of Paragraph
(D) or (E) of the Texas Family Code or substantially equivalent provisions of the
law of another state.


For the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child [J.A.C.]
[M.L.C.] to be terminated, it must also be proved by clear and convincing evidence that termination
of the parent-child relationship is in the best interest of the child.


Question 1


Should the parent-child relationship between [Tawnya L. Cox] [Paige A. Cox] and the child [J.A.C.]
[M.L.C.] be terminated?
3. The Tenth Court of Appeals recently reversed and remanded a termination case because
the broad-form submission allowed termination of parental rights without ensuring that at least ten
jurors agreed on any one of the possible statutory conduct charges. In re B.L.D. and B.R.D., 56
S.W.3d 203, 218 (Tex. App.--Waco 2001, pet. granted). That opinion relied on Crown Life Ins. Co.
v. Casteel, 22 S.W.3d 378, 387-90 (Tex. 2000), for the proposition that a broad-form liability
question incorporating multiple theories of liability is invalid. B.L.D., 56 S.W.3d at 218. However,
Crown Life merely held that when a broad-form jury submission includes multiple theories of
liability, and one of those theories is legally improper, the entire jury charge is invalid. Crown Life,
22 S.W.3d at 387-90. Crown Life does not apply in cases where the disjunctive allegations track the
language of a governing statute, as does the jury charge in this case. See B.L.D, 56 S.W.3d at 700
(Gray, J., dissenting); see also Excel Corp. v. Apodaca, 51 S.W.3d 686, 700 (Tex. App.--Amarillo
2001, pet. granted) (citing E.B. for the proposition that valid and settled theories must be pleaded in
the disjunctive even after Crown Life).
4. Although appellants also challenge the trial court's decision not to provide them with
appellate counsel, the issue is moot because appellants have been ably represented by retained
appellate counsel in this appeal.
5. The right to counsel can be waived, even by criminal defendants. See Collier v. State, 959
S.W.2d 621, 625-26 (Tex. Crim. App. 1997).
6. While recognizing that the family code provides for appointed counsel to some indigent
parents in termination cases, courts have found that this right does not rise to the level of the Sixth
Amendment guarantee of effective counsel afforded to criminal defendants. See Arteaga v. Texas
Dep't of Protective & Regulatory Servs., 924 S.W.2d 756, 762 (Tex. App.--Austin 1996, writ
denied); see also In re B.B., 971 S.W.2d 160, 172 (Tex. App.--Beaumont 1998, pet. denied); In re
J.F., 888 S.W.2d 140, 143 (Tex. App.--Tyler 1994, no writ); Posner v. Dallas County Child Welfare
Unit, 784 S.W.2d 585, 588 (Tex. App.--Eastland 1990, writ denied); Howell v. Dallas County Child
Welfare Unit, 710 S.W.2d 729, 734-35 (Tex. App.--Dallas 1986, writ ref'd n.r.e). Only the Tenth
and First Courts of Appeals have held to the contrary. See B.L.D., 56 S.W.3d at 211-12; In re J.M.S.,
43 S.W.3d 60, 62-64 (Tex. App.--Houston [1st Dist.] 2001, no pet.) ("If we require mandatory
appointment of counsel, we must hold the appointed counsel accountable if they are ineffective.").
7. Even if we were to apply the constitutional standard for ineffective assistance of counsel,
no evidence supports the claim that appellants' appointed lawyer's actions were ineffective. Absent
actions so egregious that they per se comprise ineffective assistance, a criminal defendant pleading
ineffective assistance must demonstrate that counsel's performance was unreasonable under the
prevailing professional norms and that the challenged action was not sound trial strategy. Strickland
v. Washington, 466 U.S. 668, 688 (1984); Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991).
8. Section 107.013 (b) reads as follows:



 If both parents of the child are entitled to the appointment of an attorney ad
litem under this section and the court finds that the interests of the parents
are not in conflict, the court may appoint a single attorney ad litem to
represent the interests of both parents.



Tex. Fam. Code Ann. § 107.013(b) (West Supp. 2002). The family code is silent as to whether the
trial court, after initially appointing a single attorney to represent both parents, must appoint
additional counsel to represent each parent individually upon a later showing of a conflict of
interests. Because appellants never articulated or otherwise demonstrated to the trial court their
purported conflict of interest, we need not address this issue.