Opinion issued June 5, 
2003

     
In 
The
Court of 
Appeals
For 
The
First District of 
Texas


NO. 
01-01-00916-CV


EARL ANTHONY CALLAHAN 
AND RONNIE JAMES DOUCET, Appellants
V.
BRAZORIA COUNTY 
CHILDREN’S PROTECTIVE SERVICES UNIT, Appellee


On Appeal from the 300th 
District Court
Brazoria County, 
Texas
Trial Court Cause No. 
11608*RH00


MEMORANDUM 
OPINION
          The 
Brazoria County Children’s Protective Services (CPS), filed suit to terminate 
the parent-child relationship between C.A. and G.A., minor children, and their 
mother, Dawn Allen, as well as the parent-child relationship between G.A. and 
appellant Ronnie James Doucet, and C.A. and appellant Earl Callahan. The jury 
returned a verdict terminating the parent-child relationships of Allen, Doucet, 
and Callahan, and named CPS as the sole managing conservator over the children. 
The trial court entered a decree based on the jury’s verdict.
          In 
two issues, Doucet, father of G.A., argues that the evidence is legally and 
factually insufficient to support the jury’s verdict, and he was denied the 
effective assistance of counsel.
          In 
two issues, Callahan, father of C.A., argues that the evidence is factually 
insufficient to support the termination grounds found by the jury, and the 
evidence is factually insufficient to support a finding that the termination was 
in the best interest of the child.
          We 
affirm.
Facts After meeting Allen, 
Doucet moved into the home of Allen and Allen’s mother, Mrs. Parker, for a 
period of about three to four months. At the time, Doucet was 20 years old and 
Allen was 16 years old. While living at Mrs. Parker’s house, Allen became 
pregnant with G.A. Before G.A. was born, Doucet, who was on probation for the 
offense of sexual assault, was sent back to prison, and was subsequently 
convicted of aggravated sexual assault – engaging in organized criminal 
activity. Doucet was still in prison at the time of the civil 
trial.
          Dr. 
Milton Williams, who examined Doucet before trial, testified that Doucet has a 
history of suicide attempts and recurrent depression, and has a propensity for 
violence and an anti-social personality disorder. Allen testified that Doucet 
was violent towards her and that, on one occasion, Doucet grabbed her by the 
throat and threw her on the bed. Allen also testified that, in one encounter, 
Doucet grabbed her sister, Amanda, by the arms and shook her hard. Doucet 
admitted to using marihuana up until the time of his 
imprisonment.
          Callahan 
moved in with Allen and Mrs. Parker when Allen was 16 or 17 years old. At the 
time, Allen was pregnant with G.A., and G.A. was born during Callahan’s stay in 
the house. Callahan and Allen began having sexual relations about two weeks 
after Callahan moved into the house. According to Mrs. Parker, Callahan was 
forced out of the house for having sex with Allen and for doing drugs in the 
house. Mrs. Parker also testified that she observed Callahan pushing Allen 
during his stay in her home. 
          After 
being forced to leave, both Callahan and Allen left Parker’s house and lived at 
various residences over the next several months. Callahan and Allen were at 
Callahan’s sister’s residence in Colorado when Allen discovered that she was 
pregnant again. Allen left a month later and informed Callahan by telephone, 
from Texas, that she was pregnant with C.A. Callahan moved from Colorado back to 
Texas to live with Allen. Allen testified that Callahan was violent towards her, 
and that, on one occasion, Callahan started to choke her. When Allen was four 
months’ pregnant, Callahan was incarcerated for the felony offense of injury to 
a child. 

 Callahan testified that he used marihuana up until the 
point that he was incarcerated.
          Callahan 
was released from prison on December 11, 2001. He lived with his grandmother 
after his release and began having supervised visitation with C.A. Callahan 
eventually moved in with Michelle, a girlfriend, and lived with her up until 
trial. Callahan had not provided any financial support for C.A. at the time of 
trial. Previous to Callahan’s relationship with Allen and his incarceration for 
injury to a child, Callahan was convicted for unauthorized use of a motor 
vehicle. 
          CPS 
initiated the termination proceedings after a former boyfriend of Allen’s 
dropped off G.A. and C.A. at the Oyster Creek Police Department and informed the 
police that Allen had left the children with him and that she had not returned. 
When the children were turned over to the police, they were both dirty, their 
diapers were saturated, and C.A. had a severe diaper rash that was causing her 
skin to peel.
Termination of Doucet’s 
Parental Rights 

 
Legal and Factual 
Sufficiency
          In 
his first issue, Doucet argues that the evidence was legally and factually 
insufficient to support the jury’s verdict because the termination was based 
upon conduct occurring prior to his knowledge of his paternity of the 
child.
          Doucet’s 
parental rights were terminated because of jury findings under section 
161.001(1)(e) and (h) of the Texas Family Code. They provide that the 
parent-child relationship may be terminated if the parent has:
(e) 
engaged in conduct or knowingly placed the child with persons who engaged in 
conduct which endangers the physical or emotional well-being of the child; . . 
.
 
(h) 
voluntarily, and with knowledge of the pregnancy, abandoned the mother of the 
child beginning at a time during her pregnancy with the child and continuing 
through the birth, failed to provide adequate support or medical care for the 
mother during the period of abandonment before the birth of the child, and 
remained apart from the child or failed to support the child since the 
birth.
Tex. Fam. Code 
Ann. § 161.001(e), (h) (Vernon 2002).
          The 
termination of parental rights must be supported by clear and convincing 
evidence. Tex. Fam. Code Ann. § 
161.001; In re C.H., 89 S.W.3d 17, 23 (Tex. 2002). The clear and 
convincing standard needed to support termination of parental rights is the 
degree of proof that will produce in the mind of the trier of fact a firm belief 
or conviction as to the truth of the allegations sought to be proved. In re 
C.H., 89 S.W.3d at 25. 
Legal 
Sufficiency
          When, 
as here, a party without the burden of proof challenges the legal sufficiency of 
the evidence, we will sustain the challenge only if, considering the evidence 
and inferences in the light most favorable to the finding, there is not more 
than a scintilla of evidence supporting it. See Burroughs Wellcome Co. v. 
Crye, 907 S.W.2d 497, 499 (Tex. 1995); In re B.M.R., 84 S.W.3d 814, 
817 (Tex. App.—Houston [1st Dist.] 2002, no pet.). “More than a scintilla of 
evidence exists where the evidence supporting the finding, as a whole, ‘rises to 
a level that would enable reasonable and fair-minded people to differ in their 
conclusions.’” Burroughs Wellcome, 907 S.W.2d at 499 (citations 
omitted).
          When 
determining whether a parent has engaged in conduct that endangers the 
well-being of a child, parental conduct before and after the birth of the child 
should be considered. In re M.J.M.L., 31 S.W.3d 347, 351 (Tex. App.—San 
Antonio 2000, pet. denied); Avery v. State, 963 S.W.2d 550, 553 (Tex. 
App.—Houston [1st Dist.] 1997, no pet.).
          Doucet 
argues that the evidence is legally insufficient to support the verdict because 
his parental rights were terminated based upon conduct that occurred prior to 
the establishment of the parent-child relationship. This Court has previously 
held that the parental conduct to be examined in considering termination of 
parental rights includes what the parents did before and after the birth of the 
child. Avery, 963 S.W.2d at 553. Under subsection (e), knowledge of 
paternity is not a prerequisite to a showing of parental conduct that endangers 
a child. In re M.J.M.L., 31 S.W.3d at 351. Accordingly, in making our 
legal-sufficiency determination under subsection (e), we will include within our 
review evidence of Doucet’s conduct that occurred before Doucet alleges that he 
knew that he was G.A.’s father.
          At 
trial, the evidence showed that Doucet was convicted of sexual assault and 
aggravated sexual assault – engaging in organized criminal activity. Allen 
testified that Doucet was violent towards both her and her sister, Amanda. 
Doucet admitted that he used marihuana up until the time that he was imprisoned. 
Dr. Williams testified that Doucet had a history of suicide attempts, has an 
anti-social personality disorder, and has a propensity for violence. 
 
          We 
hold that this testimony amounts to more than a scintilla of evidence to support 
a finding under subsection (e) that Doucet engaged in a course of conduct that 
endangered the physical or emotional well-being of G.A. It does not matter that 
G.A. might not have suffered actual injury from Doucet’s conduct. In re 
M.C., 917 S.W.2d 268, 269 (Tex. 1996). Evidence of Doucet’s criminal 
history, violent actions, drug use, imprisonment, mental condition, and suicide 
attempts are enough to support the jury’s finding under subsection (e). See 
In re C.H., 89 S.W.3d at 28 (parent’s criminal history involving drugs and 
assaults was evidence of parent’s inability to raise a child); Texas Dept. of 
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987) (imprisonment may be 
considered as a factor by the jury in a determination to terminate parental 
rights under subsection (e)); In re M.J.M.L, 31 S.W.3d at 352 (drug use 
is considered in determining endangerment to the physical and emotional 
well-being of a child); Director of Dallas County Child Protective Serv. Unit 
of Tex. Dept. of Human Serv. v. Bowling, 833 S.W.2d 730, 733 (Tex. 
App.—Dallas 1992, no writ) (violent or negligent conduct directed at children or 
a parent is a factor in considering the termination of parental rights under 
subsection (e)); In the Interest of C.D., 664 S.W.2d 851, 853 (Tex. 
App.—Fort Worth 1984, no writ) (mental conditions and suicide attempts of parent 
were factors in considering whether parent engaged in conduct that endangered 
the emotional well-being of child). Accordingly, we hold that the evidence is 
legally sufficient to support the jury’s verdict. 
          In 
holding that the evidence is legally sufficient to support termination under 
subsection (e), we need not discuss Doucet’s legal sufficiency argument as to 
subsection (h) since one ground is sufficient to support termination. 
Avery, 963 S.W.2d at 553.
Factual 
Sufficiency
          In 
a factual-sufficiency review, we determine whether the evidence is such that a 
finder of fact could reasonably form a firm belief or conviction about the truth 
of the allegations. In re C.H., 89 S.W.3d at 25. We will consider all of 
the evidence in the record, including that which supports or contradicts the 
trial court’s findings. Id. at 29. 
          Doucet 
argues that the evidence was factually insufficient to support the verdict 
because termination under subsection (e) cannot be based solely on the grounds 
of imprisonment. Additionally, Doucet argues that any other evidence to support 
the verdict under subsection (e) is also factually 
insufficient.
          While 
termination under (e) may not be based on imprisonment alone, imprisonment can 
be considered as a factor in determining whether the parent has engaged in a 
course of conduct that endangers the physical or emotional well-being of the 
child. Boyd, 727 S.W.2d at 533. At trial, the jury was able to consider 
testimony of Doucet’s imprisonment, criminal history, drug use, violent acts 
towards Allen and Amanda, suicide attempts, and mental condition. After 
reviewing all of the evidence, both favorable and unfavorable to Doucet, we hold 
that the jury could have reasonably formed a firm belief that Doucet had engaged 
in conduct that was endangering to G.A. In re C.H., 89 S.W.3d at 25. 
Accordingly, we hold that the evidence is factually sufficient to support the 
jury’s verdict. 
          In 
holding that the evidence is factually sufficient to support termination under 
subsection (e), we need not discuss Doucet’s factual sufficiency argument as to 
subsection (h). Avery, 963 S.W.2d at 553.
          We 
overrule Doucet’s first issue.
Effective Assistance of 
Counsel
          In 
his second issue, Doucet argues that he was denied the effective assistance of 
counsel because of trial counsel’s failure to object to the testimony of Dr. 
Williams and failure to preserve charge error.
          Some 
Texas Courts of Appeals have held that parents who have been appointed counsel 
in parental-termination cases are not constitutionally entitled to effective 
assistance of counsel. In re B.B., 971 S.W.2d 160, 172 (Tex. 
App.—Beaumont 1998, pet. denied); Arteaga v. Texas Dep’t of Protective and 
Regulatory Servs., 924 S.W.2d 756, 762 (Tex. App.—Austin 1996, writ denied); 
In re J.F., 888 S.W.2d 140, 143 (Tex. App.—Tyler 1994, no writ); 
Posner v. Dallas County Child Welfare Unit, 784 S.W.2d 585, 588 (Tex. 
App.—Eastland 1990, writ denied). This Court, however, requires that, in 
parental termination cases, where there is mandatory appointment of counsel, the 
appointed counsel must be held accountable if they are ineffective. In re 
J.M.S., 43 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2001, no 
pet.).
          The 
right-to-counsel standard in criminal cases is the same standard that is to be 
used in parental-termination cases. Id. The United States Supreme Court, 
in Strickland v. Washington, has held that the “benchmark for judging any 
claim of ineffectiveness must be whether counsel’s conduct so undermined the 
proper functioning of the adversarial process that the trial cannot be relied on 
as having produced a just result.” 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 
(1984). Strickland established two factors for determining the proper 
standard for attorney performance. First, the performance must be deficient to 
the level that counsel made errors so serious that counsel was not functioning 
as the “counsel” guaranteed to the defendant by the Sixth Amendment, and, 
second, the defendant must show the deficient performance prejudiced the 
defense. Id. 466 U.S. at 687, 104 S. Ct. at 2064. The counsel’s errors 
must have been so serious as to deprive the defendant of a fair trial, and there 
is a reasonable probability that, but for the counsel’s unprofessional errors, 
the result would have been different. Id. 466 U.S. at 694, 104 S. Ct. at 
2068. There is a presumption that the counsel’s conduct fell within the wide 
range of reasonable professional assistance, and the defendant must overcome the 
presumption that the challenged action might be considered sound trial strategy. 
Id. 466 U.S. at 689, 104 S. Ct. at 2065. 
Failure to Object to 
Dr. Williams’ Testimony
          Prior 
to trial, Doucet’s counsel requested the appointment of a psychiatrist to 
evaluate, among other things, Doucet’s ability to consult with counsel. 
Following a hearing, the trial court denied the motion, but later, after CPS 
argued that Doucet’s mental condition was relevant to the case, the trial court 
ordered a mental examination of Doucet by Dr. Williams. At trial, Dr. Williams 
was the first witness called and Doucet’s counsel did not object to his 
testimony. Doucet now argues that his trial court counsel should have objected 
and asserted that the mental health evaluation by Dr. Williams was privileged. 

          Generally, 
the diagnosis of a patient by a physician and the communications between a 
patient and physician are privileged. Tex. R. Evid. 509, 510. However, there 
is no privilege “as to a communication or record relevant to an issue of the 
physical, mental, or emotional condition of a patient in any proceeding in which 
any party relies upon the condition as a part of the party’s claim or defense.” 
Tex. R. Evid. 510(d)(5); see, 
e.g., Gustafson v. Chambers, 871 S.W.2d 938, 943-45 (Tex. App.—Houston [1st 
Dist.] 1994, no writ) (recognizing that rule 510(d)(5) allowed plaintiff, in 
malpractice action, to use physician’s mental health records as evidence that 
physician was impaired by intoxicant abuse during time he treated plaintiff). 

          Here, 
CPS was attempting to use Doucet’s previous suicide attempts, recurrent 
depression, and anti-social personality disorder as evidence relevant to whether 
Doucet engaged in endangering conduct under subsection (e). Accordingly, because 
CPS was relying upon Doucet’s mental and emotional condition as grounds for 
termination under subsection (e), Dr. Williams’ testimony as to Doucet’s mental 
and emotional condition was not privileged.
          Doucet 
also argues that his trial counsel should have objected to Dr. Williams’ 
testimony on the ground that the trial court failed to comply with Texas Rule of 
Procedure 204.1(d), which requires that an order for a mental examination must 
be in writing, and specify the time, place, manner, conditions, and scope of the 
examination. The order of the trial court that compelled a mental examination in 
this case was not in writing, but Doucet does not explain how he was harmed by 
the trial court’s failure to comply with the writing requirement of rule 
204.1(d). Doucet does not cite any authority suggesting that Dr. Williams’ 
testimony would be inadmissible as a result of a rule 204.1(d) violation, and, 
accordingly, we are unable to determine that Doucet’s counsel erred by not 
objecting to the testimony on those grounds. 
          Additionally, 
Doucet argues that his trial counsel should have objected to Dr. Williams’ 
testimony based upon CPS’s failure to disclose Dr. Williams as a person with 
knowledge of relevant facts, identify him as an expert, or provide any of the 
information required by rule 194.2(f) regarding experts. Tex. R. Civ. P. 
194.2(f).
          Generally, 
a party who fails to make, amend or supplement a discovery response in a timely 
manner is not permitted to introduce the evidence or information that was not 
timely disclosed. Tex. R. Civ. P. 
193.6(a). However, the court may allow the introduction of the evidence 
or information if the court finds that there was good cause for the failure to 
timely make, amend, or supplement, or the failure would not unfairly surprise or 
unfairly prejudice the other parties. Tex. R. Civ. P. 193.6(a). 

          In 
this case, a mental exam was requested by Doucet’s trial counsel six days before 
voir dire was to start. Doucet’s trial counsel informed the trial court that 
Doucet had been placed with a psychiatric unit within the Texas Department of 
Corrections, and argued that a mental exam of Doucet was needed because of 
Doucet’s alleged inability to consult with him about the case. On direct 
examination at the hearing, Doucet testified that he was in the psychiatric unit 
for “suicide, homicide, depression, and hearing voices.” Doucet also testified 
that he was on several types of medication, and that he conferred with the 
voices in his head before making decisions. The trial court denied Doucet’s 
motion for a mental examination, but the day before voir dire was to start, CPS 
decided to use Doucet’s mental condition as part of its case, and, at a 
pre-trial hearing, the trial court ordered that Dr. Williams perform a mental 
examination of Doucet.
          As 
was discussed, Doucet’s trial counsel did not object to Dr. Williams’ testimony 
at trial. We are not persuaded, however, that the counsel’s failure to object to 
the testimony on the basis of rule 193.6 amounted to ineffective assistance. The 
trial court, under 193.6(a)(1) and (2) could have allowed the testimony if it 
found that there was good cause for the failure to supplement, or the failure to 
supplement would not unfairly surprise or unfairly prejudice the parties. In 
this case, Doucet testified at a pre-trial hearing on a motion for a mental 
examination that he was in a psychiatric unit for “suicide, homicide, 
depression, and hearing voices.” After this revelation at the hearing, Dr. 
Williams’ testimony regarding Doucet’s history of depression and suicide should 
not have come as a surprise to any of the parties. In any event, given the other 
testimony at trial establishing Doucet’s endangering conduct, we hold that the 
trial counsel’s failure to object to Dr. Williams’ testimony was not an 
unprofessional error that, with reasonable probability, changed the outcome of 
the case. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. 

Failure to Object to 
the Charge
          Doucet 
also argues that he was denied the effective assistance of counsel because of 
his trial counsel’s failure to object to the charge on the basis that (1) the 
jury was permitted to consider Doucet’s conduct with regard to G.A. and C.A., 
when Doucet was only the father of G.A., and (2) the termination question based 
on subsection (e) was submitted as a single question and was not broken up until 
multiple questions.
          The 
termination question based on subsection (e) was as follows: 
Do 
you find by clear and convincing evidence that Ronnie James Doucet engaged in 
conduct or knowingly placed the child with persons who engaged in conduct which 
endangers the physical or emotional well-being of the 
child?
Doucet argues that, because the question refers only to 
“the child,” the jury could have considered Doucet’s conduct in relation to G.A. 
or C.A., rather than just Doucet’s child, G.A. 
          Doucet’s 
argument fails because, while the above question does not identify G.A. as “the 
child,” the jury charge does identify G.A. as “the child,” in subpart 
two. 

 In subpart one, there are two questions. The first 
question, which we have already identified above, is based upon subsection (e), 
and the second question is based on subsection (h). The jury charge provided 
that if either of the two questions in subpart one were answered with a “yes,” 
then the jury was to proceed with the question in subpart two. The question in 
subpart two is as follows:
          Do 
you find by clear and convincing evidence that termination of the parent-child 
relationship between Ronnie James Doucet and [G.A.] is in the best interest of 
the child?
The 
question in subpart two, then, clearly identifies G.A. as “the child” to be 
considered in the determination of the termination of Doucet’s parental rights. 
Additionally, the record indicates that the charge was read to the jury before 
the jury retired, so the identification of “the child” as G.A., in subpart two, 
was already given to the jury before they contemplated the two questions in 
subpart one. Further, the testimony at trial made it clear that G.A. was the 
child of Doucet, and C.A. was the child of Callahan. It is unlikely that a jury 
charge identifying G.A. as “the child” within the termination question based on 
subsection (e) would have caused a different result in the case. See 
Strickland, 466 U.S. U.S. at 694, 104 S. Ct. at 2068. Accordingly, we hold 
that Doucet was not denied effective assistance of counsel because of the trial 
counsel’s failure to object to the lack of identification of “the child” in the 
termination question based on subsection (e). 
          Doucet 
also contends that the termination question based on subsection (e) is 
objectionable because it was submitted as a single question. Doucet argues that, 
because there are two clauses in subsection (e), with one clause regarding 
endangering conduct, and the other clause regarding the placement of the child 
with persons who engage in endangering conduct, there should have been a 
separate question for each clause. 
          The 
rules of procedure mandate that broad-form questions be submitted to the jury 
whenever feasible. Tex. R. Civ. P. 
277. When there is a single broad-form question that is supported by 
multiple theories of liability, and a party believes that one of those theories 
is invalid, it may be to the party’s advantage to request that the theories be 
addressed in separate questions so that a reviewing court can determine which 
theory or theories the jury relied on in making a finding on the cause of 
action. See Muldrow, Louis S. & Underwood, William D., Application 
of the Harmless Error Standard to Errors in the Charge, 48 Baylor L. Rev. 815, 838-39 (1996). Here, 
Doucet does not explain how he was harmed by the submission of a single 
question. The termination question tracks the language used in the statute under 
subsection (e), and Doucet does not argue that one of the clauses in subsection 
(e) is an invalid or unconstitutional ground for termination of parental rights, 
such that a single question would not be feasible. Accordingly, we hold that the 
trial counsel of Doucet did not provide ineffective assistance of counsel for 
failing to object to the submission of a single broad-form question based on 
subsection (e). 
          In 
holding that Doucet was not denied the effective assistance of counsel with 
regard to charge error in the termination question based on subsection (e), we 
need not address the alleged charge error in the question based upon subsection 
(h). See Avery, 963 S.W.2d at 553.
Termination of 
Callahan’s Parental Rights
Factual Sufficiency of 
Termination Findings under section 161.001(1)(e)
          In 
his first issue, Callahan argues that the evidence is factually insufficient to 
support the jury’s termination finding under section 161.001(1)(e). Under 
subsection (e), as has been discussed, parental rights may be terminated if 
there is a finding, by clear and convincing evidence, that the parent engaged in 
conduct or knowingly placed the child with persons who engaged in conduct that 
endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 
161.001(e).
          In 
our factual-sufficiency review, we will determine whether the evidence is such 
that a finder of fact could reasonably form a firm belief or conviction about 
the truth of the allegations. In re C.H., 89 S.W.3d at 25. We will 
consider all of the evidence in the record in making our determination. 
Robinson v. Texas Dep’t of Protective and Regulatory Servs., 89 S.W.3d 
679, 687 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
          Callahan 
argues that the evidence to support the termination finding under subsection (e) 
is insufficient because, since the birth of C.A., he has not engaged in 
endangering conduct, and since the time he has been released from prison, his 
relationship with C.A. has been good. 
          At 
trial, Callahan testified that, after being released from prison, he has been 
able to have supervised visits with his daughter, and he has missed only a few 
of his scheduled visits. Callahan also testified that he is no longer taking or 
using drugs. Mrs. Rieger, the caseworker assigned to the case at the time of 
trial, testified that, during Callahan’s supervised visits, he has shown concern 
for C.A., and has acted appropriately and interacted well with C.A. during the 
visitations. Shawna Gibson, Callahan’s sister, testified that she did not have 
concerns about C.A. being given over to Callahan. 
          Even 
though some of the this testimony could have been viewed by the jury as 
favorable to Callahan, the jury also heard evidence of Callahan’s conduct that 
was not favorable to him. Allen’s mother, Parker, testified that she observed 
Callahan pushing Allen while they were living in her home, and Callahan admitted 
to attempting to choke Allen on one occasion. Callahan also admitted to using 
marihuana up until the point that he was incarcerated, and that, during his 
relationship with Allen, while Allen was pregnant, he had sex with a girl who 
was 14 or 15 years old, and was subsequently convicted of the offense of injury 
to a child. The jury also heard evidence that Callahan had been convicted of the 
offense of unauthorized use of a motor vehicle. 
          The 
jury, after hearing evidence both favorable and unfavorable to Callahan, found 
that Callahan engaged in conduct, or knowingly placed C.A. with persons who 
engaged in conduct, that endangered the physical or emotional well-being of C.A. 
As we have already discussed in Doucet’s legal-sufficiency issue, findings of 
criminal history, imprisonment, drug use, and family violence can all be 
considered as factors supporting the termination of parental rights. See, 
e.g., In re C.H., 89 S.W.3d at 28 (parent’s criminal history involving drugs 
and assaults was evidence of parent’s inability to raise a child); Boyd, 
727 S.W.2d at 533 (imprisonment may be considered as a factor by the jury in a 
determination to terminate parental rights under subsection (e)); In re 
M.J.M.L, 31 S.W.3d at 351 (drug use is considered in determining 
endangerment to the physical and emotional well-being of a child); 
Bowling, 833 S.W.2d at 733 (violent or negligent conduct directed at 
children or a parent is considered in termination proceedings under subsection 
(e)). 
          After 
reviewing all of the evidence, both favorable and unfavorable to Callahan, we 
hold that the jury could have reasonably formed a firm belief that Callahan had 
engaged in conduct that was endangering to the physical or emotional well-being 
of C.A. In re C.H., 89 S.W.3d at 25. Accordingly, we hold the evidence is 
not factually insufficient to support the jury’s termination findings under 
subsection (e). 
          We 
overrule Callahan’s first issue.
Best Interest of The 
Child
          In 
issue two, Callahan challenges the factual sufficiency of the jury’s finding 
that the termination of Callahan’s parental rights was in the best interest of 
C.A. Tex. Fam. Code Ann. § 
161.001(2) (Vernon 2002). 
          Some 
of the principal balancing factors to be used in determining the best interest 
of a child include (1) the desires of the child; (2) the emotional and physical 
needs of the child, now and in the future; (3) the emotional and physical danger 
to the child, now and in the future; (4) the parental abilities of the 
individuals seeking custody; (5) the programs available to assist these 
individuals to promote the best interest of the child; (6) the plans for the 
child by those seeking custody; (7) the stability of the home or proposed 
placement; (8) the acts or omissions of the parent which may indicate that the 
existing parent-child relationship is not a proper one; and (9) any excuse for 
the act or omission of a parent. Holley v. Adams, 544 S.W.2d 367, 371-72 
(Tex. 1976); Robinson, 89 S.W.3d at 687-88.
          These 
factors are not exhaustive, and absence of evidence for some of these factors 
does not preclude a fact-finder from forming a reasonably strong belief that 
termination is in the best interest of the child. In re C.H., 89 S.W.3d 
at 27.
          Callahan 
contends that, since his imprisonment, he has had positive contacts with C.A., 
and that he has not yet been given the opportunity to further develop his 
relationship with C.A. In support of Callahan’s contention that he has had 
positive contacts with C.A., he cites the testimony of several witnesses at 
trial who saw Callahan interact with C.A. during supervised visits. Ms. Martin, 
one of the caseworkers involved in the case, testified that, during supervised 
visits that she witnessed, Callahan had interacted well with C.A. and nothing 
inappropriate had happened. Ms. Rieger, another caseworker involved in the case, 
also testified that she witnessed Callahan visit with C.A. and that Callahan had 
interacted well with C.A. during the visit. Callahan’s sister, Shawna Gibson, 
testified that she would not have any concerns about C.A. being turned over to 
him. Callahan testified that he has not used any drugs since his release from 
prison, and that he has secured adequate housing with a girlfriend. 

          The 
jury also, however, heard evidence suggesting that C.A.’s interests would best 
be suited by the termination of Callahan’s parental rights. With regard to the 
Holley factors, C.A., a toddler at the time of trial, did not express her 
wishes, but evidence of Callahan’s past history of criminal offenses, 
imprisonment, marihuana use, and violent acts reflect poorly on Callahan’s 
parental abilities, and call into question his ability to provide for the 
present and future physical and emotional needs of C.A. See Holley, 544 
S.W.2d at 371-72. The same evidence also provided sufficient proof of Callahan’s 
inability to provide a stable home environment for C.A. With regard to the home 
that CPS proposed to place the children in, there was testimony at trial that 
the home had undergone careful scrutiny from CPS, and was considered an 
appropriate, safe, and stable environment for C.A. From this evidence, the jury 
could have reasonably formed a firm belief that the termination of Callahan’s 
parental rights was in C.A.’s best interest. In re C.H., 89 S.W.3d at 25. 
Accordingly, we hold that there was factually sufficient evidence that the 
termination of Callahan’s parental rights was in the best interest of 
C.A.
          We 
overrule Callahan’s second issue.
 
 
 
Conclusion 

          We 
affirm the trial court’s decree.
 
                                                             Sherry 
Radack
                                                             Chief 
Justice
Panel consists of Chief Justice Radack and Justices 
Alcala and Higley.